**Steven CAUDLE–EL, Plaintiff,**

**v.**

**Howard PETERS III, Major McCollum, Harvey Traver, Warren Ensor, Daniel Barkhart, Charles Akins and Ralph Johnson, Defendants.**

**No. 88 C 3949.**

United States District Court, N.D. Illinois, E.D.

Oct. 15, 1989.

Steven Caudle–El, Menard, Ill., pro se.

Brian Donovan, Atty. Gen's. Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiff, a former prisoner of the Illinois Department of Corrections, has brought this action *pro se*, under 42 U.S.C. § 1983, to redress alleged deprivations of his Fourteenth Amendment rights. The defendants, officers of the Illinois Department of Corrections, have moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief can be granted. The defendants claim further that they are entitled to qualified immunity. For the reasons set forth below, the defendants' motion to dismiss is granted in part and denied in part. The defendants' claim of qualified immunity as to the remaining claims is rejected.

Caudle–El filed his complaint *pro se*, and like many such complaints filed by prisoners in this district, his complaint is not a model of clarity. Nevertheless, the allegations of a prisoner's *pro se* complaint, though inartfully plead, are not held to the stringent standards applied to pleadings drafted by lawyers. Accordingly we will construe Caudle–El's *pro se* complaint liberally and not dismiss it for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 7–10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam); *cf. Caldwell v. Miller*, 790 F.2d 589 (7th Cir.1986) (allegations of *pro se* complaint construed liberally to establish basis for jurisdiction).

Caudle–El has named as defendants the warden and six correctional officers at the Sheridan Correctional Center. Caudle–El has alleged the following facts which we will consider as true for the purposes of deciding the motion to dismiss.[1] At all times relevant to his complaint, Caudle–El was incarcerated at the Sheridan Correctional Center. On November 27, 1987, Major Richard McCollum sent Lt. David Burkhart and Capt. Warren Ensor to move Caudle–El to another location without any valid reason. Caudle–El was "slow to respond" because he wanted to know the reason why he was being moved. At that point, Capt. Harvey Tarver arrived and did something to "provoke" Caudle–El into a scuffle with the three officers. Caudle–El was then handcuffed and secured. (Plf.Resp. at ¶ 4). Burkhart then attacked Caudle–El and choked him without justification. (Plf. Resp. at ¶ 4). Also while Caudle–El was in handcuffs and secured, Ensor maliciously attacked Caudle–El, threw him to the ground and "dropped his knee into" Cau-

---

1. Caudle–El's *pro se* response to the defendants' motion to dismiss both repeated and expanded on the factual allegations of his complaint. At points the response substantiated and clarified the basis for his claims. Rather than dismiss a portion of the complaint simply because it lacked a factual allegation provided by Caudle–El in his response, we grant Caudle–El leave to amend his complaint to include the allegations

drawn from his response as indicated in our summary of facts. Thus, we will consider the defendants' motion to dismiss in light of Caudle–El's complaint in its amended form. This will not prejudice the defendants, since they commendably took the opportunity to fully respond to the additional allegations in their reply.

dle–El's back. Ensor then told Caudle–El he would have him killed. As a result of these actions, Caudle–El received immediate medical attention from an outside physician. (Plf.Resp. at ¶ 2).

Following this incident, Caudle–El was brought before the prison's Adjustment Committee. Lt. Ralph Johnson, the chairman of the committee, denied Caudle–El's request for a prison advocate or counselor. (Plf.Resp. at ¶ 5). After the hearing, Caudle–El was placed in segregation. There he was denied all hygiene material for six days. Sometime later, Lt. Charles Akins testified before a grand jury concerning the incident. Caudle–El was then tried in the circuit court for unspecified charges. The warden Howard Peters III approved all of the foregoing actions and events.

On these facts, Caudle–El alleges several constitutional violations giving rise to liability under 42 U.S.C. § 1983. We will address each in turn.

■ First, Caudle–El claims that Johnson, the chairman of the Adjustment Committee, violated his due process rights by denying him the assistance of a prison advocate or counselor when he appeared before the committee. As a general rule, however, there is no constitutional right to an advocate in a prison disciplinary proceeding. *Wolff v. McDonald,* 418 U.S. 539, 569–70, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974). Further, Caudle–El's complaint does not show that he falls within that class of persons for whom there may be an exception to the general rule because of their inability to comprehend and respond to the administrative action brought against them. *See id.* at 570, 94 S.Ct. at 2982.[2] Therefore, Caudle–El has failed to state a viable claim against Johnson.

■ Caudle–El next claims that he was unconstitutionally placed in double jeopardy when he was brought before both the prison Adjustment Committee and the circuit court for the same acts. Caudle–El further asserts that Akin was a party to this alleged infringement by testifying before a grand jury about what Caudle–El claims was a purely institutional matter. These allegations fail to state a claim, however, since it is well established that administrative punishment imposed by prison officials does not render a subsequent criminal prosecution violative of the Fifth Amendment prohibition of double jeopardy. *United States v. Shapiro,* 383 F.2d 680, 683 (7th Cir.1967); *United States v. Rising,* 867 F.2d 1255 (10th Cir.1989). *Cf. United States v. Hanahan,* 798 F.2d 187 (7th Cir.1986) (administrative proceeding and criminal proceeding serve different ends).

■ Caudle–El next alleges that McCollum violated his due process rights when McCollum ordered his relocation, without providing a reason and purely to harass Caudle–El. We will first consider McCollum's failure to give Caudle–El a reason for the transfer. Caudle–El does not specify where McCollum had decided to move him. However, even if we construe Caudle–El's complaint liberally to state that he was transferred from one prison to another less desirable prison, due process does not require that McCollum tell Caudle–El why he was being transferred. *See Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Prison officials are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judg-

---

**2.** In *Wolff,* the court suggested that:

Where an illiterate inmate is involved ... or where the complexity of the cause makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. 418 U.S. at 570, 94 S.Ct. at 2982.

Illinois has codified this suggestion by allowing an inmate to "request the assistance of a staff member in the preparation and presentation of his defense if he is illiterate, does not speak English, or when other circumstances exist which preclude him from adequately preparing his defense." 20 Ill.Admin.Code § 504.80(j). We note that the relative legibility of both his complaint and response are further indication that Caudle–El does not fall within the excepted class.

ment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Such policies and practices include the decision to reassign a prisoner within a particular prison or to transfer him to another prison. *See, e.g., Harris v. McDonald,* 737 F.2d 662 (7th Cir.1984) (intrastate transfer from medium to maximum security institution).

The decision to reassign or transfer a prisoner from one location to another having a substantial adverse impact on the prisoner does not rise to the level of a due process violation absent a liberty interest grounded in state law. *Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538. The Illinois administrative regulation governing reassignment and transfer of prisoners does not provide such a liberty interest. 20 Ill.Admin.Code § 503.120 (governing administrative transfers). That regulation places no relevant limits on McCollum's discretion to reassign inmates within the institution. *See Mathews v. Fairman,* 779 F.2d 409, 414–15 (7th Cir.1985). Accordingly, Caudle–El has failed to state a claim against McCollum based on McCollum's failure to provide a reason for the transfer.

■ Caudle–El also bases his claim against McCollum on the allegation that McCollum relocated him for the improper purpose of harassing him. The inference to be drawn from this claim is that McCollum's decision to relocate him was based on a discriminatory or retaliatory animus. The protections of due process prohibits retaliatory action when that action is meant to punish an inmate for exercising his constitutional rights. *See, e.g., Ustrak v. Fairman,* 781 F.2d 573 (7th Cir.1986) (transfer following inmate's letters complaining of racial discrimination); *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982). In order to state a claim for retaliatory transfer, however, a prisoner must allege a chronology of events from which retaliation may be inferred. *Murphy v. Lane,* 833 F.2d 106, 108–09 (7th Cir.1987). Alleging the mere fact of retaliation is insufficient. *Benson v. Cady,* 761 F.2d 335, 342 (7th

Cir.1985). Caudle–El has provided no facts in his complaint from which retaliation might be inferred. Indeed, his allegation of harassment is nothing more than an allegation of the mere fact of retaliation. Therefore, Caudle–El has failed to state a claim against McCollum on this ground as well.

■ Caudle–El next raises a claim that Traver, Burkhart and Ensor violated his constitutional right to be free from cruel and unusual punishment. Traver allegedly violated this right by "provoking" Caudle–El into a "scuffle" with the three officers. Burkhart put a chokehold on Caudle–El while he was handcuffed. And Ensor threw Caudle–El to the ground and "dropped a knee into" his back while he was handcuffed. Further, Ensor made death threats against Caudle–El during this incident. Caudle–El described all three officers as participants in an "attack" against him.

Regarding the provocation and threat, Traver and Ensor argue that "mere words or threats, however violent, do not amount to an actionable assault under § 1983." *Simms v. Reiner,* 419 F.Supp. 468, 474 (N.D.Ill.1976). Traver and Ensor's argument is valid, however, only to the extent such words or threats do not result in or accompany physical harm. Here, the allegations are that the provocation led to a scuffle which resulted in a further attack on Caudle–El. Ensor's threat arose during the course of that attack. Therefore, we will consider the facts of verbal provocation and threats within our consideration of Caudle–El's general claim that the force used on him violated his right to be free from cruel and unusual punishment.

■ Wide-ranging deference is accorded decisions by prison officials to use force in response to actual confrontations with prisoners and breaches of prison discipline. *Whitley v. Albers,* 475 U.S. 312, 321–22, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). In order to state an Eighth Amendment claim against Traver, Ensor and Burkhart, Caudle–El must allege facts sufficient to support an inference that the officers inflicted pain upon him wantonly, in bad faith

and for no legitimate purpose. *Id. See also Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

The allegations in the complaint indicate that the initial provocation and scuffle occurred as a consequence of Caudle–El being "slow to respond" to the officers' orders. Caudle–El has not alleged any facts upon which to base an inference that the force initially used by any of the three officers during the scuffle exceeded the scope of deference accorded their decisions. Therefore, Caudle–El has failed to state a claim based on the provocation by Traver or on the conduct of all three officers during the ensuing scuffle.

■ We do find, however, that such an inference may be drawn from the allegations concerning actions following the scuffle: After Caudle–El had been handcuffed and secured, Burkhart choked him; Ensor threw him to the ground and dropped his knee into him; and Ensor accompanied his assault with death threats against Caudle–El. Caudle–El further alleges that these acts were sufficiently violent to require immediate medical attention from an outside physician. In addition, he includes the general allegation that these acts were committed willfully and without justification. Construing these allegations liberally, they support an inference that Burkhart and Ensor wantonly used excessive force on Caudle–El after he had already been subdued. Other courts have found that similar allegations stated a claim upon which relief could be granted. For example, in *Grillo v. Sielaff,* 414 F.Supp. 272, 275 (N.D.Ill.1976), the court held that allegations that an inmate was "punched, kicked, hit with a cloth-wrapped object and 'slammed' into a steel door 'as a battering ram,' during which time he was wearing a restraining belt, exemplifies the type of unjustified beating that is cognizable under Section 1983." *See also Gaut v. Sunn,* 810 F.2d 923 (9th Cir.1987) (allegations that inmate was beaten while handcuffed stated a claim under section 1983). We conclude, therefore, that Caudle–El's allegations that Burkhart and Ensor physically injured him

without justification while he was handcuffed and secured state a viable claim which, if proved, would entitle him to relief under section 1983. Because Caudle–El fails to allege that Traver committed any specific acts of violence upon him after the scuffle and while he was handcuffed, we dismiss the claim against Traver.

■ Caudle–El's next claim is that, while in segregation following the incident, he suffered cruel and unusual punishment when he was denied all hygiene material for six days. The defendants argue that such treatment does not deprive an inmate of basic human needs or of the minimal civilized measure of life's necessities sufficient to rise to the level of a constitutional violation. *See Rhodes v. Chapman,* 452 U.S. at 347, 101 S.Ct. at 2399.

The Seventh Circuit has recently considered whether allegations similar to Caudle–El's give rise to an Eighth Amendment violation. In *Harris v. Fleming,* 839 F.2d 1232 (7th Cir.1988), an inmate alleged that prison officials failed to provide him with toilet paper for five days or with soap, toothbrush or toothpaste for ten days, and that he was kept in a filthy, roach-infested cell. In their motion for summary judgment, the prison officials conceded that personal items were not promptly supplied, but argued that the short delay amounted to no more than negligence. In an affidavit in support of their motion for summary judgment, the officials stated that inmates were supplied each Friday with hygiene items, and that beyond the regular schedule, it was also the prison's policy to provide additional supplies as needed upon an inmate's request. The officials challenged the inmate's counteraffidavit for merely alleging that he failed to receive what he needed when he needed it.

The Seventh Circuit granted the defendants' motion for summary judgment, finding that:

The circumstances of the case demonstrate some neglect and indifference on [the prison's] part, but the conditions were temporary and affected only one inmate. Although Harris experienced considerable unpleasantness, he suffered

no physical harm. [The prison's] policies in these areas of responsibility, as reflected by the affidavits, are constitutionally acceptable if prison officials observe them. Harris does not dispute the truth of the affidavits. The defendants' temporary neglect of Harris's needs was not intentional, nor did it reach unconstitutional proportions.... The constitutional test requires courts to look to "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 1235–36 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).

That standard, the court concluded, has not evolved sufficiently to satisfy the claims of the prisoner. *Id. (citing, e.g., Citro v. Zeek,* 544 F.Supp. 829 (1982) (failing to provide a prisoner with an adequate supply of toilet paper does not create a violation of constitutional magnitude)).

Caudle–El's allegation that he did not receive any hygiene materials for six days is not dissimilar to the allegations by the inmate in *Harris* that he was temporarily deprived of toilet paper, soap, toothbrush and toothpaste. Moreover, like the inmate in *Harris,* Caudle–El apparently suffered no physical harm from the lack of hygiene materials. Standing alone, such a circumstance, though unpleasant, does not reach constitutional proportions when it results from the temporary negligence of prison officials in implementing otherwise constitutionally acceptable policies. *Id.*

Caudle–El has alleged no facts which distinguish his plight from that of the prisoner in *Harris.* Caudle–El's complaint contains no allegations from which we might infer that the prison's policies regarding the provision of hygiene materials were constitutionally unacceptable. Nor is there any indication that an individual officer intentionally withheld hygiene materials in contravention of prison policy and against a legitimate request for these materials by Caudle–El.[3] *See Rhodes,* 452 U.S. at 355, 101 S.Ct. at 2404 (Brennan, J. concurring)

(indicating that there could be no constitutionally permissible justification for intentionally depriving a prisoner of the most basic materials for maintaining personal hygiene); *Schmitt v. Crist,* 333 F.Supp. 820, 822 (E.D.Wis.1971) ("[I]t is difficult to conceive of a legitimate prison objective which requires that a prisoner be denied the use of soap, tooth brush, and clean bedding."). Accordingly, Caudle–El has failed to state a claim based on his failure to receive hygiene materials for six days.

■■■■ Finally, Caudle–El has sued Warden Peters, apparently in his individual capacity, because the warden "approved" the alleged constitutional violations committed by the other defendants. To be held liable for the conduct of subordinates, a supervisor must have been personally involved in that conduct. *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). Noting that this "is a vague standard," Judge Posner in *Jones* attempted to clarify the level of involvement required:

> The supervisors must know about the conduct and facilitate it, *approve it,* condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference. *Id.* at 993–94 (emphasis added).

Caudle–El has plainly alleged that the warden approved the conduct of the other officers. We recognize that Caudle–El has not alleged with particularity the form the warden's approval took regarding the conduct of officers Burkhart and Ensor. Nevertheless, his general allegation justifies the inference at this stage of the proceeding that the warden was directly and personally involved in the alleged unconstitutional behavior. *Compare, e.g., Adams v. Pate,* 445 F.2d 105, 107 (7th Cir.1981) (warden dismissed because there were not allegations he directly participated in, knew about or consented to plaintiff's treatment). Thus, we deny the motion to dismiss the claim against the warden.

**3.** Indeed, Caudle–El has failed to name or otherwise identify a defendant in connection with this claim.

## 1182

We turn now to the defendants' claim that they are entitled to qualified immunity. The remaining defendants, Burkhart, Ensor and Peters, are shielded from individual liability only if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). The defendants' sole argument in support of their claim to immunity is that their alleged actions do not rise to the level of a constitutional violation. We have held here, however, that the use of excessive and unreasonable force against a prisoner who is restrained and secured constitutes cruel and unusual punishment. The defendant prison officials cannot seriously contend that they are unaware that their prisoners retain a right to be free from cruel and unusual punishment. Further, in that context, the concept of excessive force is not an alien constitutional concern. The defendants have the burden of proof of satisfying the affirmative defense of immunity. *See Williams v. Lane*, 851 F.2d 867 (7th Cir.1988). They have failed to show that a reasonable person would not have known of the right claimed by Caudle–El.

### , Conclusion

Caudle–El has failed to state a claim against defendants Johnson, Akin, McCollum and Traver. We therefore dismiss his complaint as to those defendants. We also dismiss Caudle–El's claim that he was unconstitutionally deprived of hygiene materials. Further, we dismiss Caudle–El's complaint against Burkhart and Ensor insofar as it is based on their conduct prior to and during the alleged "scuffle."

We deny Burkhart and Ensor's motion to dismiss the complaint relating to their alleged actions against Caudle–El after he was handcuffed and secured. Finally, we deny the warden's motion to dismiss the complaint as it relates to his alleged role in approving the conduct of Burkhart and Ensor. Neither Burkhart, Ensor nor the warden are entitled to qualified immunity on these claims. It is so ordered.