**Spencer HARRIS, Plaintiff–Appellant,**

v.

**Ronald FLEMING, Larry Frailey and Walter Breischke, Defendants–Appellees.**

No. 86–2549.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1987.

Decided Feb. 10, 1988.

As Amended Feb. 12, 1988.

Martin J. Black, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiff-appellant.

Eddie Santiago, Atty. Gen. Office, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, WOOD, and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant, Spencer Harris, is a prisoner of the State of Illinois, confined at the Menard Correctional Center in Menard, Illinois. On August 26, 1985 he filed this civil rights action under 42 U.S.C. § 1983 against three officers of Menard seeking $320,000 in compensatory and punitive damages and for other relief.[1] Harris alleged that he was subjected to cruel and unusual punishment in violation of the eighth amendment because of certain conditions of his confinement. He also claimed that he was retaliated against in job and cell assignments because of an earlier lawsuit he had filed against Menard.[2] The magistrate did not appoint counsel for Harris. On August 19, 1986, the magistrate granted the defendants' motion for summary judgment from which Harris appeals.[3]

## I. FACTUAL BACKGROUND

Defendant Ronald Fleming was Assistant Warden of Programs at Menard, defendant Larry Frailey was Chairman of the Assignment Committee for the Protective Custody Unit, and defendant Walter Breischke was Supervisor of the Library.

---

1. Harris described himself at the time he filed his complaint as a fifty-year-old Afro–American who had just completed a seven-year term and started a thirty-year sentence at Menard.

2. A separate forerunner to this case, in which Harris charged racial discrimination in cell assignments and job hirings in the protective custody unit, was here previously after its dismissal by the magistrate. *Harris v. Greer*, 750 F.2d 617 (7th Cir.1984). We affirmed in part, reversed in part, and remanded.

3. Chief Judge Foreman had previously entered an Order of Reference, and Harris and the defendants stipulated to final entry of judgment by the United States Magistrate, Gerald B. Cohn, pursuant to 28 U.S.C. § 636(c).

From February 15, 1981 to January 17, 1986, Harris was incarcerated in the prison's protective custody unit, a unit designed to segregate inmates who are believed to be in danger from other inmates in the general population. Harris had held several prison jobs. One was with Lifer's Inc., selling candy and cigarettes to inmates; he also worked as a clerk in Menard's library. Shortly after defendants Frailey and Fleming assumed their positions at Menard, Harris lost his job with Lifer's Inc., and about a week later he also lost his job as library clerk. Harris alleges that he was told the first firing resulted from insufficient security to maintain the detail, and the second firing was attributed to his failure to file a required library form on time. Harris alleges that the proffered reasons are pretextual.

Harris also alleges that he was subjected to a series of cell transfers while other inmates similarly situated were not moved so often. In April 1985, during the time he was being held in protective custody, Harris was transferred to a cell in the segregation unit. This appears to have been because Harris refused to change cells within the protective custody unit. The segregation cell was filthy, roach-infested, and lacked the personal hygiene items he needed. During this time the prison psychiatrist noted that Harris was extremely dirty. Harris had no opportunity for a yard or recreation period during his twenty-eight day stay in segregation. These conditions, Harris claims, caused him mental and physical distress, and violated the eighth amendment.

His prior case against Menard was still pending in June 1985 when an Assistant Attorney General visited him, Harris says. They talked about a settlement, but Harris refused to settle. The next day Harris lost a job he had as a foodhandler and three days later he was transferred to a cell with a known homosexual. Harris complained, and about a month after this suit was filed the process began for returning him against his will to the general population. That resulted, he claims, in his being transferred to a cell block with two of the four inmates he had advised the officials were his enemies.

## II. ANALYSIS

### A. Confinement Conditions

Harris claims that he suffered cruel and unusual punishment and his eighth amendment rights were violated because of the conditions of his confinement in the segregation unit. Harris asserts that he was not provided with toilet paper for five days (the defendants claim it was four days), and that he lacked soap, toothbrush, and toothpaste for ten days. He also claims that he was kept in a filthy, roach-infested cell.

The defendants concede that the personal items were not promptly supplied, but argue that the short delay amounts to no more than negligence. A defendant's affidavit in support of summary judgment states that inmates were supplied each Friday with hygienic items, but beyond the regular provisionary schedule it was also Menard's policy to provide additional supplies as needed upon an inmate's request. The affidavit also states that Menard had retained a private pest control service to inspect the prison on a regular basis. The defendants claim that it was Menard's policy to be receptive to individual requests for pest control in the cells. The Menard defendants fault Harris's counteraffidavit for merely alleging that he failed to receive what he needed when he needed it. Defendants argue that summary judgment, dismissing Harris's claims, was therefore in order.

The eighth amendment prohibiting cruel and unusual punishment is applicable to the states through the fourteenth amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. A description of how bad prison conditions can be may be found in *Pugh v. Locke,* 406 F.Supp. 318 (M.D.Ala. 1976), *aff'd as modified sub nom., Newman v. Alabama,* 559 F.2d 283 (5th Cir. 1977), *rev'd in part on other grounds sub nom. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101

S.Ct. 1759, 68 L.Ed.2d 239 (1981). As the Supreme Court noted in *Rhodes v. Chapman,* the amendment reaches beyond "barbarous physical punishment" to prohibit " 'the unnecessary and wanton infliction of pain' " (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)) and punishment "grossly disproportionate to the severity of the crime." 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981). The Constitution also prohibits punishment that is "totally without penological justification," *Gregg,* 428 U.S. at 183, 96 S.Ct. at 2929, as well as "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Penal conditions may not "deprive inmates of the minimal civilized measure of life's necessities." *Chapman,* 452 U.S. at 347. There shall be no gratuitous infliction of suffering. *Gregg,* 428 U.S. at 183, 96 S.Ct. at 2929.

Harris argues that the denial of hygienic items and the other conditions meet those tests because the amendment reaches situations less serious than the totally deplorable prison conditions described in *Pugh.* Harris is partially correct. *Pugh* and *Ramos,* depicting abominable prison-wide conditions, do not demarcate the eighth amendment threshold. That threshold, however, is not so low as Harris would have us adjust it.

We recently stated, citing *Ramos,* that a claim of inadequate heating, or a guard's practice of banging on the bars, may state an eighth amendment violation. *Lewis v. Lane,* 816 F.2d 1165, 1171 (7th Cir.1987).[4] In *Lewis* we held, as Harris points out, that summary judgment was inappropriate. One reason for that holding was that appointed counsel had grossly neglected the case. More importantly for the purposes of this case, however, *Lewis* involved prison policies and practices affecting all prisoners and not just an isolated instance of negligence temporarily inconveniencing only one inmate. Harris argues that if the harm caused by guards banging on bars is

enough to trigger constitutional protection, then "the harm caused by deprivation of toilet paper for five days and celling a prisoner in a filthy, roach-infested cell would certainly constitute a violation." This incomplete comparison leads Harris to the wrong conclusion.

There is no doubt that prisoners must be provided with basic human needs. Chief Judge Foreman, in an earlier class action, directed Menard to maintain a constitutional level of cleanliness and sanitation. *Lightfoot v. Walker,* 486 F.Supp. 504 (S.D. Ill.1980). Judges are not wardens, but we must act as wardens to the limited extent that unconstitutional prison conditions force us to intervene when those responsible for the conditions have failed to act.

The circumstances of this case demonstrate some neglect and indifference on Menard's part, but the conditions were temporary and affected only one inmate. Although Harris experienced considerable unpleasantness, he suffered no physical harm. Menard's policies in these areas of responsibility, as reflected by the affidavits, are constitutionally acceptable if prison officials observe them. Harris does not dispute the truth of the affidavits. The defendants' temporary neglect of Harris's needs was not intentional, nor did it reach unconstitutional proportions. The defendants did not act in a deliberate and reckless manner, in the criminal law sense. *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Although Menard may merit some management criticism, at this stage the defendants' conduct is not unconstitutional, as indifferent and inconsiderate as it was in regard to this one inmate. The fact that other inmates have not joined this suit suggests its singularity. This observation, of course, should not be taken to mean that conduct affecting only one inmate may never be unconstitutional.

Inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate

---

**4.** *Ramos* held that "a state must provide … reasonably adequate ventilation, sanitation, bed-

ding, hygienic materials, and utilities." 639 F.2d at 568.

confinement. The constitutional test requires courts to look to "the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *Sostre v. McGinnis*, 442 F.2d 178, 190 (2d Cir.1971), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). That standard simply has not evolved sufficiently to satisfy Harris, and may never. *See, e.g., Citro v. Zeek*, 544 F.Supp. 829, 830 (W.D.N.Y.1982); *Tunnell v. Robinson*, 486 F.Supp. 1265, 1268–69 (W.D.Pa.1980); *Bauer v. Sielaff*, 372 F.Supp. 1104, 1109–10 (E.D.Pa.1974), *appeal dismissed*, 510 F.2d 969 (3d Cir.1975). This issue was ready for summary judgment even accepting the truth of Harris's complaints.

## B. Lack of Exercise

Harris claims that his constitutional right to exercise was violated during his twenty-eight days in the segregation unit. We evaluate this separate exercise claim according to the same standards that we have already discussed in relation to the other prison conditions.

It is obviously difficult for a prison to extend all the privileges the general population receives to one who wants and needs to be protected from other inmates for his own welfare. Harris claims he was given a Hobson's choice: either forgo his exercise rights or accept a transfer to the general population where he could exercise. Harris characterizes this offer as some form of retaliation against him for filing lawsuits, and also, more directly, claims that twenty-eight days without exercise is cruel and unusual punishment. It is true that we have suggested that lack of exercise could be cruel and unusual punishment, but we have not yet so held. *See Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir.1986) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986)).

In *French* we stated that lack of exercise could rise to a constitutional violation "[w]here movement is denied and mus-

cles are allowed to atrophy, [and] the health of the individual is threatened." 777 F.2d at 1255. Nothing of that consequence was claimed to have been reached in this case even though it was not a desirable situation. If exercise is what Harris desperately wanted he could have improvised temporarily with jogging in place, aerobics, or pushups. He retained the ability to move about in the unit. This was a short-term situation, lasting only four weeks. Where there is a general policy limitation on exercise some courts have endeavored to set minimums, but in this case we need not reach that issue. *Campbell v. Cauthron*, 623 F.2d 503, 507–08 (8th Cir.1980); *Hutchings v. Corum*, 501 F.Supp. 1276, 1294 (W.D.Mo.1980). Harris claims only to have been deprived of yard or recreation time, not all exercise. In modern prisons the denial of recreation time may deprive inmates of many desirable, entertaining diversions the lack of which would not raise a constitutional issue.

In *Caldwell v. Miller*, 790 F.2d 589 (7th Cir.1986), this court approved the grant of summary judgment for the defendants in a case where the inmate had been deprived of indoor and outdoor recreation and confined to his cell twenty-four hours a day in a lockdown situation. We could find nothing in the complaint other than inconvenience and discomfort, both of which fall outside the eighth amendment. 790 F.2d at 600–01. Lack of exercise is easily distinguishable from deliberate denial of medical care. Unless extreme and prolonged, lack of exercise is not equivalent to a medically threatening situation.

Assuming the truth of Harris's allegations, the magistrate properly disposed of this issue by summary judgment.

## C. Retaliation for Continuing Prior Litigation

Harris claims that he has demonstrated a pattern of firings from his job assignments and cell transfers which should have been sufficient to withstand the defendants' motion for summary judgment.

In June 1985, according to Harris, an Assistant Attorney General visited him at

Menard seeking to settle his pending lawsuit against Menard. Harris declined to settle, and alleges that the defendants knew of this refusal. Harris says that he was fired from his third job as a foodhandler the next day, and that two days later he was transferred against his will into a cell with a known homosexual. Harris claims that he was given no reasons for those actions, and the defendants have not denied that they acted in retaliation. The timing of his firing and transfer, he argues, is enough to make retaliation a jury question.

Prior to these incidents, in December 1984, Harris argues, he held two prison jobs, library clerk and salesman for Lifer's Inc. That month Harris achieved a remand from this court of his prior suit against Menard personnel. Within about a week of the remand he lost both jobs. Harris was told that there was inadequate security for him in his work for Lifer's Inc. and that he was fired from the library job because he filed a monthly library form a day late (even though the prison was on lockdown at the time). Harris disputes these reasons as "not ringing true," pointing out that when security again reached adequate levels, he was not restored to his Lifer's Inc. job. The library job, Harris says, was important to him in the pursuit of his litigation.

Harris has sworn that he was transferred from cell to cell about every six weeks, often enough to prompt the prison psychiatrist to inquire as to the reason. We do not find the answer the psychiatrist may have received. Other prisoners were not so regularly rotated. Ultimately Harris was transferred into the general population against his wishes and, he claims, housed in a cell block with several known enemies of his.

The defendants view these events, which they generally concede, in a different light, and find no disputed issue of material fact to withstand summary judgment. The de-

fendants, however, suggest in their brief that Harris was fired from his Lifer's Inc. job in April 1984, but the magistrate in his August 18, 1985 order found the date to be December 1984, as Harris claims. The defendants also argue in their brief that Harris was fired from his library clerk's position eight months after losing his Lifer's Inc. job, instead of within the same week as claimed by Harris. Again the magistrate's order finds the date to be as Harris claimed. There is no dispute as to the date Harris was fired from his foodhandler's job: June 1985. We are unable to reconcile the other time inconsistencies. The defendants assert that the timing, as they chronicle it, which appears to be in error, undercuts any inference that impermissible motives were at work leaving Harris, they argue, with nothing but the conclusory allegation of retaliation.[5]

The magistrate in his order takes note that removal of a prisoner from his job because of the inmate's legal activities can state a cause of action, citing *Rhodes v. Robinson*, 612 F.2d 766, 772 (3d Cir.1979). The *Robinson* case happens also to involve an inmate's removal from a library job allegedly in retaliation for the inmate's legal activities. The magistrate, however, allowed the defendants summary judgment on the basis that there was nothing in Harris's complaint except conclusory statements. Even though Harris was acting *pro se* at the time, the magistrate found that the minimal standard of particularity was not satisfied. *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1207 (7th Cir.1980). The Menard defendants, of course, support the magistrate's conclusions.

We cannot find that the magistrate took any notice of certain allegations in Harris's original complaint of August 26, 1985, his amended complaint of March 19, 1986, or his affidavit. The amended complaint expanded on the first complaint with allegations that Harris was discriminated against because of his prior lawsuit, and that his

---

**5.** Prisoners have no liberty or property interests in receiving or retaining a job while in prison, nor does Harris allege any such interest. *Garza v. Miller*, 688 F.2d 480, 485 (7th Cir.1982), *cert.*

*denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir.1980).

other job and cell problems began within a week of his meeting with the Assistant Attorney General at which he declined to settle his pending litigation. The defendants argue that his claim should have alleged more specific facts and used particular language such as the words "arbitrary and capricious." The inartful pleading of a *pro se* litigant, however, is not to be read with such technical formality. *Caldwell v. Miller*, 790 F.2d 589, 595 (7th Cir.1986). The timing of the events may be significant but was given no weight by the magistrate, and appears to have been misperceived by defendants.

Although the defendants contend that they are viewing the complaint and affidavit in the context of an appeal of summary judgment, that is, in the light most favorable to the nonmovant Harris, their actual position does not appear to us to be quite so generous. We also note that the defendants misunderstand the standard of review. The defendants argue that "a jury would not necessarily return a verdict in [Harris's] favor on the charge of retaliation." The nonmovant need not show that a jury would inevitably return a verdict in his favor, only that there was sufficient evidence, "taking into account the evidentiary standard of proof and drawing all reasonable inferences in [the nonmovant's] favor, to allow a rational jury to decide for [the nonmovant]." *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

One of the defendants, Frailey, responded by affidavit to the confinement conditions allegations, but responded incompletely as to job loss and cell transfers.

■ We do not know what the merits of the retaliation claim may be and we express no preliminary view, but Harris's allegations and the differences in timing are enough to require more than summary treatment. In our judgment Harris has raised genuine issues of material fact sufficient to defeat summary judgment on this part of his complaint. His claim, on this record, is therefore not appropriate for disposition as a matter of law. The defend-

ants largely supported their summary judgment motion on the argument that Harris has no due process right to job or cell assignment. The issue, however, is the defendants' possible retaliation for Harris's at least partially successful attempt to exercise his constitutional right of access to the courts, and harm to him through his refusal to settle. *See Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir.1987); *Matzker v. Herr*, 748 F.2d 1142, 1150–51 (7th Cir.1984); *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). There is a time relationship in those events which appears to have been misunderstood or overlooked. This particular claim deserves additional consideration.

## III. CONCLUSION

The grant of summary judgment as it pertains to Harris's claim of retaliation is reversed and remanded for additional proceedings consistent with this opinion. Upon remand the court shall reconsider the appointment of counsel for Harris under *Maclin v. Freake*, 650 F.2d 885 (7th Cir. 1981). *See also McNeil v. Lowney*, 831 F.2d 1368, 1371–73 (7th Cir.1987); *Black v. Lane*, 824 F.2d 561, 563 (7th Cir.1987); *Matzker*, 748 F.2d at 1151 (Cudahy, J., concurring). There was no error in failing to appoint counsel for the balance of the case. The remainder of the summary judgment order is affirmed.

Affirmed in part and reversed and remanded in part. Costs are waived.