John–Tyronne MARTIN, Plaintiff,

v.

Michael LANE, et al., Defendants.

No. 88 C 9600.

United States District Court,
N.D. Illinois, E.D.

June 12, 1991.

John–Tyronne Martin, pro se.

Roland W. Burris, Atty. Gen. of Illinois by Arthur S. Zaban, Asst. Atty. Gen., Gen. Law Div., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

John–Tyronne Martin, now an inmate at Pontiac Correctional Center, has again filed a 42 U.S.C. § 1983 suit with this court challenging the procedures of the Department of Corrections and the conditions of his confinement at the Stateville Correctional Center. The court was first introduced to Martin in *Martin v. Davies*, 694 F.Supp. 528 (N.D.Ill.1988), *aff'd*, 917 F.2d 336 (7th Cir.1990), where Martin claimed that he was denied meaningful access to the courts. In this case, Martin attacks more than restricted access to the law library, he challenges a whole array of institutional practices and services.

Defendants Michael Lane and Michael O'Leary move for summary judgment on Martin's claims. Although some of Martin's claims are quite novel, they do not all withstand summary judgment scrutiny.

## ANALYSIS

The complaints and submissions of *pro se* litigants, like Martin, are to be construed liberally. *Caldwell v. Miller*, 790 F.2d 589, 595 (7th Cir.1986). In a motion for summary judgment, the very nature of the motion requires that all reasonable inferences be made in favor of the non-moving party. Summary judgment is appropriate where there are no genuine issues as to any material fact and a judgment can be made as a matter of law. Fed.R.Civ.P. 56(c). The existence of a factual dispute will not foreclose summary judgment unless "the disputed fact is outcome determinative under governing law." *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987) (quoting *Egger v. Phillips*,

710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983)). Factual disputes are not outcome determinative if the facts asserted by the non-moving party, even assumed correct, do not state a legally sufficient claim. *Howland,* 833 F.2d at 642. That is the problem with certain of Martin's claims.

## I. Department of Corrections Procedures

Martin brings his novel claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. He accuses defendants of engaging in a conspiracy to deny benefits to black inmates. Defendant James Thompson is accused of following racially discriminatory practices in the appointment and promotion of policy-making officials in the Department of Corrections. He and defendant Jerry Consentino allegedly refused to deposit funds in minority-owned banks as well as in the minority community. It is claimed that Lane continued this policy of non-investment in minority-owned banks. Lane is also accused of engaging in discriminatory hiring and promotion practices.

■ The first issue to be addressed is whether Martin has standing to bring these claims. For standing to exist, three requirements must be met: (1) Martin must personally have suffered an actual or threatened injury caused by defendants' allegedly illegal conduct; (2) the injury must be fairly traceable to defendants' challenged conduct; and (3) the injury must be one likely to be redressed through a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

■ Martin aims his first attack at the investment practices of public officials. His contention is that funds received by the State of Illinois should be invested in minority-owned rather than white-owned banks. From the allegations in his amended complaint, it is difficult to determine whether Martin has anything at stake here. The court can only assume that Martin is

challenging these investments as a taxpayer. The funds targeted by Martin consist mainly of grants to the State of Illinois from the Department of Justice. He appears to be challenging state agencies in their use of funds received from federal agencies. If that is the case, Martin cannot sustain his claim since, in his role as a taxpayer, he can only challenge congressional or legislative actions. *City of Evanston v. Regional Transportation Authority,* 825 F.2d 1121, 1127 (7th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). Even if legislative action were involved, he could not challenge the use of these funds solely on the basis of his status as a taxpayer. "[T]he expenditure of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing, even though plaintiff contributes to the public coffers as a taxpayer." *Valley Forge,* 454 U.S. at 477, 102 S.Ct. at 761. *See Taub v. Commonwealth of Kentucky,* 842 F.2d 912, 918–919 (6th Cir.) (federal taxpayer standing rules applicable to state taxpayers), *cert. denied,* 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988). Since Martin has not alleged any direct injury he suffered that was not shared by all the taxpayers in Illinois, he does not have standing to bring this claim.

■ Martin also challenges the investment of money in a prisoners' account. From the passing reference in Martin's amended complaint to the prisoners' account, the court cannot determine the exact nature of that account. Consequently, the court cannot determine what type of injury Martin has allegedly suffered. Martin's standing, then, is questionable.

■ Even if Martin could establish that he has standing to challenge the use of the funds in the account, he does not really state a claim. Martin is not alleging that his funds were treated differently than others' funds, in violation of equal protection. Nor can he complain of a denial of due process. Martin is correct in his assertion that there are provisions in Illinois law which suggest that state funds be invested

in minority-owned banks. *See* Ill.Rev.Stat. ch. 130 para. 20.1, § 1.1 (1989); Ill.Rev. Stat. ch. 85 para. 907, § 7 (1989). The custodians of such funds, though, need only invest to the extent allowed by the Deposit of State Moneys Act and in line with the lawful and reasonable performance of their custodial duties. These provisions do not give rise to a right to have money invested in minority-owned institutions. Only those property interests to which plaintiffs have a legitimate claim of entitlement are protected by procedural due process. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Therefore, Martin's claim fails.

■■■ Martin aims his second attack at the hiring practices of the Department of Corrections. This claim is not an ordinary employment discrimination claim since Martin has not applied for a position with the Department of Corrections. (Martin's Deposition at 11 [hereinafter Dep.].) Martin is not even eligible for such a position considering his current situation. Again, attention must be given to Martin's standing. The problem, here, is his inability to allege injury-in-fact. In his amended complaint, Martin mentions loss of the benefit of interaction because blacks are not in policy-making positions. However, Martin goes no further in describing that benefit. An "alleged 'injury in fact' will not suffice if it is too speculative." *Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler,* 789 F.2d 931, 937 (D.C.Cir. 1986). Martin seems to be alleging something akin to a "stigmatizing injury often caused by racial discrimination." *Allen v. Wright,* 468 U.S. 737, 755, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984). For instance, he claims that he is subject to discrimination in each and every facet of prison life. (Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment, at 1.) In *Allen,* the Court found that this injury could only be redressed through suit by "persons who are personally denied equal treatment by the challenged discriminatory conduct." *Id.* at 755, 104 S.Ct. at 3326. The court cannot conclude from Martin's vague allegations that he was personally denied equal treatment. Unfortunately, Martin offers no additional support in his affidavit or his deposition testimony. (Dep. at 14–15.)

Further, the court has no reason to automatically assume that Martin was deprived of a benefit because non-blacks handled his case. The court has no reason to suppose that white or other minority persons would practice discrimination merely on the basis of race. *See Lamar v. Whiteside,* 606 F.2d 88, 88–89 (5th Cir.1979) (in prisoners' suit challenging racial composition of staff of Board of Pardons and Paroles, "[i]t is not enough ... merely to speculate that an allegedly racially imbalanced work force will have discriminatory proclivities.") Therefore, the court finds that Martin cannot sustain a claim on this basis. Summary judgment is granted with respect to both these claims.

## II. Conditions of Confinement

■■■ Although prisoners retain some of their constitutional rights when incarcerated, their rights may be restricted based upon "the legitimate goals and policies of the penal institution." *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Therefore, even if a restriction infringes on a constitutional right, the infringement may be permitted for reasons of institutional security. *Id.* at 547, 99 S.Ct. at 1878. The confinement conditions cited in Martin's complaint arose during lockdowns which occurred in Stateville Correctional Center from March 1988 to February 1989. These lockdowns took place several times and usually lasted one to three days. The longest occurred around October 27, 1988 and continued for approximately eighteen days. The cause of the last and longest lockdown was the death of a prison worker at the hands of an inmate. Lane (who has been replaced in office by Kenneth McGinnis) and O'Leary are the objects of Martin's confinement condition claims.

■■■ Martin attacks the imposition of the lockdown itself, but the lockdown is not a *per se* violation of Martin's constitutional

rights. *See Caldwell*, 790 F.2d at 604–605 (Marion lockdown did not bring about conditions qualitatively different from the punishment usually endured by a convict); *Davenport v. DeRobertis*, 653 F.Supp. 649, 663 (N.D.Ill.1987) (lockdowns are not unusual at Stateville), *modified*, 844 F.2d 1310 (7th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). Therefore, the court turns its attention to the lockdown conditions.

■ As part of the lockdown, prisoners were subjected to "shakedowns" of their cells. The shakedowns were performed without notice and occurred in the late evening or early morning. (Dep. at 27.) Martin challenges the shakedown of his specific cell as violative of the Fourth Amendment. The shakedown essentially consisted of a search of his cell. Clothes, legal materials and other belongings in the cell were dumped on the floor, but nothing was damaged. (Dep. at 29, 42–43.) The issue is whether Martin had an expectation of privacy in this space. The Supreme Court addressed the issue in *Hudson v. Palmer*, 468 U.S. 517, 525–526, 104 S.Ct. 3194, 3199–3200, 82 L.Ed.2d 393 (1984), and found that prisoners do not have an expectation of privacy in their prison cells. Therefore, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson*, 468 U.S. at 525–526, 104 S.Ct. at 3199–3200. And, since nothing was damaged during the search, Martin can pursue his claim no further. Summary judgment is granted with respect to this count.

■ Next, Martin claims that he was denied access to the law library. "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). The natural extension of that guarantee is providing prisoners with reasonable access to law libraries. From Martin's account, it appears that prisoners could not gain access to the law library or meet with law clerks while the prison was in lockdown. This is the beginning of an action-

able claim. However, to establish meaningful denial of access to the courts, a prisoner must take his assertions one step further and make at least some showing of prejudice. *Bruscino v. Carlson*, 854 F.2d 162, 167 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989); *Davies*, 694 F.Supp. at 529. Martin has not made such a showing here. When asked in his deposition whether he had suffered harm from his inability to use the law library, Martin could not put his finger on any prejudice. (Dep. at 60–62.) Although the lack of access to the library had caused him to delay the submission of motion papers in one of his cases, he was not penalized for his late filing. Without a showing of prejudice, Martin cannot sustain this claim. Summary judgment is also granted with respect to this claim.

In a First–Amendment based claim, Martin protests restrictions placed on the practice of religion. Martin alleges that all religious activities, including chapel services, were cut out during the lockdown period. (Dep. at 80.)

■ One of the constitutional rights retained by prisoners is their right to the free exercise of religion. Seventh Circuit cases "clearly affirm that incarcerated persons retain a right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al–Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir.1991). This right may be limited. For instance, communal worship services may be curtailed if reasonable alternatives are available. *Bruscino v. Carlson*, 654 F.Supp. 609, 618 (S.D. Ill.1987), *aff'd*, 854 F.2d 162 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989).

■ Defendants in this case have not directly addressed Martin's claims that religious activities were restricted. For that reason, the court cannot determine if group religious activities were barred, if the institution had a legitimate reason for restricting religious practices, and/or if reasonable alternatives were provided. It may be that the group religious services were banned for security reasons, a likely conclusion

considering the circumstances of the lockdown. But, without specific evidence, the state's case rests merely on an assertion. Summary judgment, therefore, is not appropriate with respect to this claim.

■ Martin's remaining claims are based on the Eighth Amendment. The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" as well as punishment that is "grossly disproportionate to the severity of the crime" for which the prisoner was imprisoned or punishment "totally without penological justification." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Conditions either singly or in their totality may serve as the basis for an eighth amendment claim.

■ Martin begins his eighth amendment claims by challenging his lack of access to the institution's educational and work programs. It is true that these facilities and programs were closed during the lockdown. The lockdowns, though, only lasted for a short while. The Eighth Amendment does not require that educational programs be provided to prisoners. *Peterkin v. Jeffes,* 661 F.Supp. 895, 917 (E.D.Pa.1987), *rev'd on other grounds,* 855 F.2d 1021 (3d Cir.1988); *French v. Owens,* 777 F.2d 1250, 1256 (7th Cir.1985), *cert. denied,* 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986). Nor are prisoners entitled to work or vocational programs. Even if what Martin alleges is true, this claim does not rise to the level of an eighth amendment violation. Summary judgment on this claim is granted.

■ Martin also alleges that he was denied access to fresh air, sunshine and exercise. Some form of regular outdoor exercise is necessary to the well-being of inmates. However, "[d]enial of recreation for a short period, per se, is not a constitutional violation." *Knight v. Armontrout,* 878 F.2d 1093, 1096 (8th Cir.1989). For instance, in *Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir.1988), the Eighth Circuit found that the denial of yard privileges for eleven days during a lockdown period did not constitute an eighth amendment violation. Similarly, the Seventh Circuit in *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988), found that the deprivation of yard privileges for four weeks did not rise to the level of an eighth amendment violation. The Seventh Circuit noted that "this was a short-term situation" and, in any event, the inmate was not deprived of *all* exercise. *Id.*

In this case, Martin claims that he was confined to his cell and denied outdoor exercise during lockdown periods. The lockdowns usually lasted from one to three days to a maximum of eighteen days. The eighteen-day maximum falls within the range of days without exercise that courts have permitted. Moreover, there is no hint in Martin's complaint he was not able to exercise within his cell. For these reasons, the court finds that this claim cannot be sustained on the basis of Martin's allegations. Summary judgment on this claim is appropriate.

Next, Martin brings a host of claims attacking the lack of hygienic conditions. Martin reels off a list of necessities that he lacked:

> For the entire periods of these lockdowns plaintiff was confined to his cell and denied access to showers, clean laundry and linen, [and] soap.... All hot food was clogged and served cold while all cold food was served warm and both coated with the grease of the food.... No spoons or forks were passed out with the food.... No toilet paper was passed out nor soap to clean the cell, toilet or sink nor tooth paste or brooms.

(Plaintiff's Amended Complaint at 8).

■ A state must provide an inmate with "adequate ventilation, sanitation, bedding, hygienic materials and utilities." *Ramos v. Lamm,* 639 F.2d 559, 568 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). The denial or lack of any one of these necessities would likely cause considerable discomfort. Neglect, indifference, or discomfort, though, are not sufficient to establish an eighth amendment claim. Such a claim depends on the circumstance and duration

of the discomfort as well as any resulting physical effects.

Martin's complaint focuses on the lockdown periods. According to O'Leary, the former warden of Stateville, the purpose of the lockdown was to ensure security. As a result, services were brought to the inmates where previously the inmates had been brought to the services. (O'Leary deposition at 35.) Some discomfort was bound to occur under these circumstances. On the whole, these conditions stretched from one to three days to a maximum of eighteen days. The shortness of the deprivation mitigates against a finding of a violation. For instance, in *Harris*, 839 F.2d at 1234, the Seventh Circuit found that an inmate's lack of soap, toothbrush and toothpaste for ten days and toilet paper for five days with no resulting physical harm was not sufficient to state a violation. In *Gilland v. Owens*, 718 F.Supp. 665, 685 (W.D.Tenn.1989), the court noted that "[s]hort term deprivations of toilet paper, towels, sheets, blankets, ... toothpaste, toothbrushes, and the like do not rise to the level of a constitutional violation." Although there is some disagreement in this case as to whether these hygienic materials were provided during the lockdown periods, even assuming that they were not, the temporary nature of the deprivation along with the lack of harm rule out the claim of a constitutional violation.

"[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy period of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.1989). Here, the length of time during which Martin was allegedly deprived of laundry service was relatively short. At best it was only one to three days, at worst it was eighteen days. This short-term deprivation does not rise to the level of an actionable claim. *Cf. Howard*, 887 F.2d at 137 (five months without laundry service in totality of the circumstances deemed violation of Eighth Amendment).

Showers are last on Martin's list of complaints regarding sanitary conditions. Martin claims that showers were not available any time during the lockdown period. Defendants disagree. As has been noted, sanitary and hygienic living conditions are among the necessities guaranteed by the Eighth Amendment. On the other hand, a short-term deprivation of these necessities does not always give rise to a claim. Should an inmate allege a specific physical harm resulting from the deprivation, his claim becomes stronger. *See Harris*, 839 F.2d at 1235. Such is the case here. Martin alleges that he suffered a body rash from the lack of showers. (Dep. at 69–70.) Allegedly, the lack of showers triggered a skin rash he had experienced in the past. Martin's allegations of resulting physical harm makes this claim actionable.

Last but not least, Martin complains about the food and lack of eating utensils in the institution. Martin's claim is not that he lacked food or that the food was not nutritional. He claims about the condition of the food. "The Constitution does not mandate that prisons be comfortable...." *Caldwell*, 790 F.2d at 601. This claim is not actionable. Of Martin's eighth amendment claims, then, the complaint about lack of showers is the only one to individually withstand summary judgment.

In addition to evaluating these claims individually, the court must look to the totality of the circumstances to determine whether the conditions of confinement violate the Eighth Amendment. In this case, the court cannot find that the totality violates the Eighth Amendment. The conditions themselves only existed for a short period of time. But for the rash provoked by the lack of showers, Martin does not allege any physical harm resulting from the short-term deprivation. The court cannot find that the conditions, even as alleged by Martin, pose an "unquestioned and serious deprivation of basic human needs," *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399, or constitute "intolerable or shocking prison conditions." *Caldwell*, 790 F.2d at 601 n. 16. Therefore, the court cannot find that the totality of circumstances gives rise to an eighth amendment claim.

Martin also challenges prison conditions under the Equal Protection Clause. However, he offers no evidence in support of this allegation. In fact, in his deposition, he states that his complaint has nothing to do with whites being treated differently than blacks at Stateville. Those words spell the end of his equal protection claim.

### III. Transfer

Martin's final challenge rests on his transfer from Stateville Correctional Center to his current placement at Pontiac Correctional Center. Essentially, he is claiming that this transfer violated his due process rights. Raising such a claim is an uphill battle. Since great deference is usually given to prison officials' decisions to reassign prisoners, prisoners do not have much redress for institutional transfers. However, a transfer may be actionable if the transfer is made because the prisoner has exercised his constitutional rights. *Caudle-El v. Peters*, 727 F.Supp. 1175, 1179 (N.D.Ill.1989). Martin alleges that he was transferred to Pontiac in retaliation for filing this lawsuit. He gives a rough chronology of events from which retaliation may be inferred: he filed this suit in November 1988 and he was transferred from Stateville to Pontiac in February 1989. (Dep. at 113–114.) Defendants contest these allegations. They claim that Martin was transferred in accordance with his desire to be moved to a different institution. Since there is a genuine dispute of material fact with regard to this claim, this claim stands.

### IV. Qualified Immunity

Martin sues defendants in both their individual and official capacities for actions taken under color of state law. Michael Lane was employed as the Director of the Department of Corrections during the time period of Martin's complaint. Defendant Michael O'Leary was employed as warden of Stateville Correctional Center during the time of Martin's complaint.[1]

If an official is sued in his official capacity for retroactive relief, it is the state which is being sued. *Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Such a suit is barred by the Eleventh Amendment. However, a suit against a state official in his official capacity for prospective relief is not considered an action against the state. A state official, then, can be sued in his official capacity for injunctive relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989). In his complaint, Martin seeks both retroactive and prospective relief. He seeks injunctive relief with respect to the investment and employment discrimination claims. The court has found these claims to be legally insufficient. (*Infra* at 645.) Martin's request for injunctive relief, then, is moot.

Martin requests retroactive relief as compensation for the confinement conditions. Since it is retroactive relief he is after, a suit in the officials' official capacity may not be brought. Martin is left with a suit against Lane and O'Leary in their individual capacities for the alleged confinement conditions.

A person can only be held individually liable if he caused or participated in an alleged constitutional deprivation. "Individual liability for damages under section 1983 is predicated upon personal responsibility." *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984). Either "the official [must have] knowingly, wilfully or at least recklessly caused the alleged deprivation by his action or failure to act," *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986), or the deprivation must have occurred at the official's direction or with the official's knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982). Martin alleges that O'Leary personally ordered the lockdown which resulted in the alleged conditions. He states that O'Leary was even present at one of the

---

1. As has been mentioned, Martin named other public officials in his complaint. The court is no longer concerned with the nature of the suit against these defendants since summary judgment has been granted with respect to all claims brought against them.

shakedowns of his cell. (Dep. at 38.) Martin also claims that O'Leary personally transferred him. As for Lane, Martin claims that Lane directly okayed the lockdown procedures. (Dep. at 126–127.) Lane states in his affidavit that although he was aware of the lockdowns at Stateville, he had no personal involvement with Martin and his confinement conditions. (Lane affidavit at 2.)

Martin alleges sufficient personal responsibility on the part of both O'Leary and Lane to bring actions against them in their individual capacities. Martin charges O'Leary with ordering the confinement conditions and his transfer. He also alleges that Lane was personally involved. Since Lane replies in the contrary, there is a genuine issue of material fact. The confinement condition claims may be brought against both Lane and O'Leary in their individual capacities.

■ O'Leary and Lane may assert a defense of qualified immunity to counter the claims brought against them in their individual capacities. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action as assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). At this time, the court cannot determine whether O'Leary and Lane are protected by qualified immunity. If the court finds that Martin's rights were violated by the curtailment of religious activities, the denial of showers, or the transfer to Pontiac Correctional Center, the law in these areas seems fairly well-established. However, the court must still decide whether defendants reasonably knew that their conduct violated clearly established rules of law or whether extraordinary circumstances existed. These are issues the court is not in a position to address at this time. Therefore, summary judgment is not appropriate on the basis of this defense.

## CONCLUSION

Of the many claims Martin brought challenging Department of Corrections procedures and confinement conditions, few remain. Those claims dealing with the restrictions on religious activities, the denial of showers, and the alleged retaliatory transfer are still actionable. As a result of summary judgment being granted on the remainder of the counts, defendants Thompson and Consentino are no longer part of the suit. In addition, injunctive relief is no longer available as a remedy. Therefore, defendants Lane, O'Leary, and McGinnis may not be sued in their official capacity. Martin may only proceed with his claims against O'Leary and Lane in their individual capacities for damages based on the alleged restricted religious activities, lack of showers, and retaliatory transfer.

IT IS SO ORDERED.