851 F.Supp. 1228 (1994)
Johnny PIPPINS, Plaintiff,
v.
ADAMS COUNTY JAIL; Louis Fergueson, Jail Administrator, Defendants.
No. 93-3122.
United States District Court, C.D. Illinois.
May 10, 1994.
*1229 *1230 Johnny Pippins, pro se.
Michael S. Nardulli, William W. Kurnik, Arlington Heights, IL, for defendants.

*1231 OPINION

RICHARD MILLS, District Judge:
Pippins is a state prisoner.
This is a civil rights action.
Pippins claims that while he was a pretrial detainee, Defendants violated his constitutional rights by: subjecting him to harsh conditions of confinement, infringing on the exercise of his religious beliefs, denying him access to the courts, and disciplining him without due process.
This matter is before the Court for consideration of the parties' cross-motions for summary judgment.
Judgment is granted in favor of Defendants.

LEGAL STANDARD
Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. Beraha v. Baxter Health Corp., 956 F.2d 1436, 1440 (7th Cir.1992).
However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no `genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Disputed facts are material only if they might affect the outcome of the suit. First Ind. Bank v. Baker, 957 F.2d 506, 507-08 (7th Cir.1992).

ALLEGATIONS
Pippins, currently an Iowa state prisoner, was a pretrial detainee at the Adams County, Illinois, Jail at all times relevant to this action (i.e., from July 19, 1992, through September 28, 1992, and again from November 3, 1992, through January 22, 1993).
Pippins brings this suit against the Adams County Jail and its administrator, Louis Fergueson.[1] He alleges that during his two periods of confinement at the jail, he was: denied any opportunity to exercise; was not provided with a Muslim diet; was not allowed access to a Koran or to a chaplain of his faith; was "locked down" for ten days as punishment without any hearing; was denied proper bedding; and was denied access to the courts. Accepting Plaintiff's allegations as true, the Court earlier found that the complaint stated an arguable claim for relief under 42 U.S.C. § 1983 and allowed Plaintiff to proceed on his claims in forma pauperis.
The more fully developed record, however, shows that Defendants are entitled to judgment as a matter of law.[2] The Court will address each of Plaintiff's claims in turn.

I. JAIL CONDITIONS

A. Conditions Generally
There is no genuine issue as to whether the conditions of Plaintiff's confinement violated his constitutional rights. The *1232 standard for determining when conditions of pretrial confinement violate due process is "whether those conditions amount to punishment of the detainee." Lock v. Jenkins, 641 F.2d 488, 490-91 (7th Cir.1981), quoting Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Pretrial detainees constitutionally cannot be punished prior to a formal adjudication of guilt. See Salazar v. City of Chicago, 940 F.2d 233, 239 (7th Cir.1991).
But, as Justice Rehnquist made clear in Bell, not every restraint on a pretrial detainee constitutes punishment in the constitutional sense. "There is, of course, a de minimis level of imposition with which the Constitution is not concerned." Bell, 441 U.S. at 539 n. 21, 99 S.Ct. at 1874 n. 21 quoting Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977). To determine whether a particular disability or condition amounts to punishment, the court "must determine whether the disability is imposed for the purpose of punishment or whether it is an incident of some other legitimate governmental purpose." Bell, 441 U.S. at 538, 99 S.Ct. at 1873.
In applying Bell to the case at bar, the Court finds no constitutional violation. Although Plaintiff may have been forced to endure a rather spartan environment, the conditions of which he complains were not so unreasonable as to violate due process. Pretrial conditions of imprisonment "do not reach even the threshold of constitutional concern until a showing is made of "genuine privations and hardship over an extended period of time." Duran v. Elrod, 760 F.2d 756, 759 (7th Cir.1985), quoting Bell, 441 U.S. at 542, 99 S.Ct. at 1875.
Here, the record does not present conditions implicating the Fourteenth Amendment. Plaintiff alleges no denial of basic needs (such as food, clothing, shelter, or medical care); furthermore, he does not purport to have suffered any constitutional harm from the purported deprivations. At his deposition, Plaintiff admitted that he remained healthy throughout his confinement (except for a brief cold and for an injury sustained in a fall), experienced no bodily or mental deterioration, and lost no weight. The limitations to which Plaintiff was subjected were not so harsh or shocking as to imply an intent to punish. Moreover, given the acknowledged overcrowding and fiscal crisis of the state's prisons and jails, the temporary restrictions alleged, neither singly nor in combination, were so excessive as to amount to an infliction of punishment proscribed by the Due Process Clause.

B. Exercise
Plaintiff decries the lack of a formal exercise program at the Adams County Jail. However, the record does not suggest that Plaintiff was unable to exercise adequately. "Unless extreme and prolonged, lack of exercise is not equivalent to a medically threatening situation." Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir.1988) (confinement in segregation unit for four weeks). There is a significant difference between a lack of formal recreation and an inability to exercise. Id.
During at least Plaintiff's first period of incarceration, he was housed in a cell that measured approximately ten feet by ten feet. In his deposition Plaintiff admitted that, throughout the day, from approximately 6:00 a.m. to 10 p.m., he also had free access to a large day room. Plaintiff retained the ability to move throughout the day area, and easily could have improvised an exercise regimen. See Harris, supra, 839 F.2d at 1236. Furthermore, there was an outside recreation yard, although Plaintiff dismisses the grounds as being as small as a "dog walk" or "cat walk." See Davenport v. DeRobertis, 844 F.2d 1310, 1315 (7th Cir.1988), cert. denied, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988) (minimal opportunity for exercise outside the cell is constitutionally required for inmates confined for more than a short period).[3]
Plaintiff's principal dissatisfaction apparently stems from the lack of exercise equipment. *1233 However, the Court finds no authority to support Plaintiff's contention that he was constitutionally entitled to weight-training machines, basketball equipment or tread-mills. The jail afforded Plaintiff a constitutionally adequate opportunity to exercise.

C. Shower Conditions
Plaintiff claims that he slipped and fell, injuring himself, because the shower area had no floor mats or safety tape. However, the lack of slip-resistant material on the floor does not approach a deliberate exposure to an unreasonable risk of harm. To rise to the level of a constitutional violation, a defendant's actions must reflect a degree of wantonness tantamount to knowing willingness that the plaintiff will be harmed by the defendant's conduct. Duckworth v. Franzen, 780 F.2d 645, 654 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Negligence is not actionable under 42 U.S.C. § 1983. Id. Any reasonably intelligent person must know that wet floors are slippery and require caution. The record does not support an inference that Defendants acted with deliberate indifference in failing to put down floor mats or safety tape.

D. Reading Materials
Plaintiff contends that the jail did not provide sufficient access to recreational reading materials. Plaintiff admits that the jail provided soft-cover books, although he is dissatisfied with the number of books available. Furthermore, Plaintiff was aware that the jail permitted him to obtain reading materials from the outside, but never ordered books with his own funds, nor asked his family to bring him books of his liking. Additionally, Plaintiff was able to watch television and could socialize with his fellow inmates, as well as with visitors. The Court is aware of no constitutional guarantee to unlimited pleasure reading, and Plaintiff was not exposed to conditions amounting to sensory deprivation.

E. Bedding
Plaintiff states that he was given a mattress and a blanket, but no pillow or sheets. However, "[p]risons are not required to provide and prisoners cannot expect to receive the services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988). Plaintiff had clothes, a bed, and a blanket with which to cover himself. The record contains no indication that the jail was unbearably cold at night. Plaintiff's dissatisfaction with the bedding at the Adams County Jail is not a matter of constitutional magnitude.

II. EXERCISE OF RELIGION
Plaintiff, who purports to be a Muslim adherent of the Islamic faith, maintains that Defendants interfered with the exercise of his religion. In order to defeat summary judgment, a plaintiff must provide specific factual allegations to support his claim of religious discrimination. Price v. Rochford, 947 F.2d 829, 832-33 (7th Cir.1991). Because Plaintiff has failed to provide any specific evidence to substantiate his belief that Defendants singled him out as a member of a group, at least in part for the purpose of causing an adverse effect on that group, summary judgment is proper. See New Burnham Prairie Homes, Inc. v. Burnham, 910 F.2d 1474, 1481 (7th Cir.1990).

A. Koran
Plaintiff first claims that he was denied his Koran during his second stay in jail. However, Plaintiff admits that the Koran he wanted his mother to send was a hard-cover book. Plaintiff never asked Defendant Fergueson whether he could have a soft-cover Koran sent directly from a publisher as opposed to having the hard-cover book brought from home.
Prison administrators must permit inmates the reasonable opportunity to exercise religious freedom. Cruz v. Beto, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1082 n. 2, 31 L.Ed.2d 263 (1972). An inmate's religious rights are subject to restriction, however. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). "[M]aintaining institutional security and preserving internal order are essential goals that may require limitation or retraction of the retained constitutional *1234 rights...." Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1978). Federal judges may not interfere in the daily administration of state prisons barring substantial evidence that they have acted disproportionately to correctional needs. Pell, 417 U.S. at 827, 94 S.Ct. at 2806.
When a challenged prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is "reasonably related" to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); Siddigi v. Leak, 880 F.2d 904, 909 (7th Cir.1989). The Court finds that the ban against hard-cover books, which can be wielded as a weapon and can be used to conceal contraband, is reasonable and sound. Accord, see Ward v. Washtenaw County Sheriff, 881 F.2d 325 (6th Cir. 1989); Bell v. Wolfish, 441 U.S. at 548-52, 99 S.Ct. at 1879-1881 (upholding "publisher only" rule). Likewise, a policy requiring books to be sent directly from the publisher averts smuggling by family and friends of inmates. Plaintiff was not denied a Koran, but rather was required to obtain a soft-cover version from a publisher, rather than having his mother mail a hard-cover copy. The requirement was reasonably related to legitimate security interests, and did not inhibit Plaintiff's ability to practice his religion.

B. Imam Minister
Fergueson refused to permit Plaintiff's Imam minister, Everette Webb, to visit Plaintiff at the jail because Webb was on parole. Fergueson's decision meets the Turner standard, as obvious prison concerns dictate against allowing paroled felons to meet with incarcerees. See Farrell v. Peters, 951 F.2d 862, 863 (7th Cir.1992) (upholding rule barring inmates from corresponding with each other). Moreover, jail officials never barred any other Imam from visiting the jail. Neither challenged rule had anything to do with religion; the same decisions would have been made had Plaintiff desired a hard-cover romance novel or a visit from a relative who happened to be a felon.

C. Pork
Plaintiff claims an additional infringement of his religious rights in that he was not provided with a substitute main dish on days when pork was served at the jail. However, the record is devoid of any facts to show that Plaintiff made the named Defendants aware of his religious dietary requirements. Plaintiff was served three meals a day. On one occasion, Plaintiff did mention to the jail cook that he was a Muslim and did not eat pork. When asked to prepare a different main dish, the cook informed Plaintiff that she could not do that; however, she gave Plaintiff extra vegetables on that occasion and thereafter whenever she served pork. There is no indication that Plaintiff pursued the matter any further with other jail officials, nor is there any suggestion that pork was served at the jail to offend Jews and Muslims. See Hunafa v. Murphy, 907 F.2d 46, 48 (7th Cir.1990).

III. ACCESS TO THE COURTS
Plaintiff alleges that the jail did not have a law library, thus denying him access to the courts. It is well established that prisoners have a constitutional right of access to the courts. Johnson by Johnson v. Brelje, 701 F.2d 1201, 1207 (7th Cir.1983), relying on Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). That right is possessed not only by convicted prisoners, but also by pretrial detainees who are jailed pending trial. Johnson, 701 F.2d at 1207. The relevant inquiry is whether the inmate has been given a "reasonably adequate opportunity" to present his claim. Martin v. Tyson, 845 F.2d 1451, 1456 (7th Cir.1988), cert. denied, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988), citing Bounds, 430 U.S. at 825, 97 S.Ct. at 1496. In the case at bar, there is no triable issue as to whether Plaintiff was denied meaningful access.
Plaintiff concedes that he was represented by counsel during both stays in the Adams County Jail, thus diminishing any concerns about access. Martin, 845 F.2d at 1456. Plaintiff's assertion that he wanted to perform his own research in order to ensure that his public defenders were doing a proper job is without merit. A lawyer is strongly presumed to have provided his or her client with reasonable, competent and professional *1235 assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687-91, 104 S.Ct. 2052, 2064-66, 80 L.Ed.2d 674 (1984); see also United States v. Weaver, 882 F.2d 1128, 1138 (7th Cir.1989).
To the extent that Plaintiff charges that he was denied an opportunity to perform research concerning jail standards, he admits that he was well aware of his rights as a pretrial detainee; in fact, Plaintiff even was able to cite the two leading cases on that subject during his deposition. Plaintiff was familiar with the general theories he needed to present, and knew that he could file a pro se complaint on his own. For that matter, Plaintiff was able to press the instant lawsuit in a timely manner. Plaintiff has shown no prejudice to his criminal case[s], nor does he point to any civil claim that he was unable to pursue. Accord, see Martin, 845 F.2d at 1456; Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir.1987) (no detriment shown by lack of legal materials); Mann v. Smith, 796 F.2d 79, 84 (5th Cir.1986) (no actual injury shown by pretrial detainee). Plaintiff has shown no harm caused by the lack of a law library at the Adams County Jail.

IV. DISCIPLINE WITHOUT DUE PROCESS
Finally, Plaintiff asserts that he was disciplined for throwing a beverage on a jail trustee without due process. On the date of the incident in question, orange juice was dashed on a jail trustee. Defendant Fergueson threatened to "lock down" the entire jail until he found out who had thrown the juice. Plaintiff admitted his guilt, whereupon Fergueson ordered him confined to his cell for ten days. Plaintiff was locked in his regular cell, not in solitary confinement.
Because Plaintiff confessed his guilt, it was unnecessary to provide a hearing or any other procedural due process in order for Plaintiff to protest the charges. Furthermore, Plaintiff's only "punishment" was confinement to his cell for ten days, with a loss of the special privileges enjoyed by those who have free movement. Jail administrators must be accorded wide deference in the measures employed to preserve institutional order and security. Bell, 441 U.S. at 544-48, 99 S.Ct. at 1876-1879. Inmates  whether pretrial detainees or convicts  cannot be permitted to assault correctional officers with impunity. The Court finds no constitutional violation.

CONCLUSION
Plaintiff's three-sentence affidavit, submitted in response to Defendants' motion for summary judgment, does not create a triable issue. Pippins states, simply: "Plaintiff categorically denies and contradicts all assertions that Defendants make in their Request for Summary Judgment." However, Defendants' statement of facts is based principally on Plaintiff's own deposition testimony. Plaintiff may not contradict his previous sworn statements, see Essick v. Yellow Freight Systems, Inc. 965 F.2d 334, 335 (7th Cir.1992); his general, across-the-board denial is insufficient to establish a material issue of fact.
In sum, no material facts are in dispute, and the Court finds that Defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the conditions at the Adams County Jail violated Pippins' constitutional rights. The record demonstrates adequate reasons for Plaintiff's somewhat restrictive environment, and Plaintiff was not singled out for punishment (except on the occasion where he admitted wrongdoing). There is no evidence whatsoever of a policy or practice of unconstitutional treatment of pretrial detainees at the Adams County Jail. Accordingly, Plaintiff's motion for summary judgment will be denied, and Defendants' cross-motion for summary judgment will be granted.
IT IS THEREFORE ORDERED that Plaintiff's motion for partial summary judgment is denied.
IT IS FURTHER ORDERED that Defendants' motion for summary judgment is allowed. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff pursuant to Fed.R.Civ.P. 56.
The case is terminated and the parties are to bear their own costs.
*1236 IT IS FURTHER ORDERED that Plaintiff's third motion for appointment of counsel is denied as moot.
NOTES
[1] Plaintiff mistakenly refers to Sheriff Nall as a third defendant in this action. However, Nall never has been properly named as a defendant, nor served, as the Court already advised Plaintiff in its Order of December 6, 1993.
[2] The Court will not entertain the parties' dispute over whether Defendants received a copy of Plaintiff's motion for summary judgment. The Defendants responded to the motion, albeit belatedly, and Plaintiff can show no prejudice stemming from the delay. The record shows that Defendants are entitled to judgment as a matter of law. Plaintiff cannot prevail on the basis of an alleged technical default.
[3] Even during Plaintiff's stay or stays in a cell that did not have access to the day area, Plaintiff conceded that there was adequate space in the cell for him to do push-ups, sit-ups, leg lifts and jumping jacks; furthermore, he was allowed outdoor recreation, notwithstanding the fact that there were no basketball hoops nor, to Plaintiff's way of thinking, sufficient room to jog.