**UNITED STATES of America, Plaintiff,**

v.

**ONE 1968 CADILLAC COUPE DeVILLE, VIN NO. J8129552, Defendant.**

No. 89 C 2877.

United States District Court, N.D. Illinois.

Jan. 5, 1990.

James J. Kubik, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Jeffrey Fawell, Fawell & Fawell, Wheaton, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This is an action for forfeiture of a 1968 Cadillac Coupe DeVille (the "Automobile") under 21 U.S.C. § 881(a)(4)[1] because it was used to transport controlled substances in violation of the federal narcotics laws. Claimant Eric Runowski ("Runowski," the Automobile's owner) and the United States developed the factual and legal issues in a bench trial before this Court. Before that trial the United States filed its Trial Memorandum, and Runowski filed his Trial Brief post-trial.

In accordance with Fed.R.Civ.P. ("Rule") 52(a), this Court finds the facts specially as set forth in the following Findings of Fact ("Findings") and states the following Conclusions of Law ("Conclusions"). To the extent if any the Findings as stated reflect legal conclusions, they shall be deemed Conclusions; to the extent if any the Conclusions as stated reflect factual findings, they shall be deemed Findings.

### Findings of Fact

1. On October 18, 1988 Warrenville Police Officer Robert Maloney ("Maloney") was on routine squad car patrol. Newly-hired Warrenville Police Officer Daniel Maida ("Maida") was a passenger in the squad car driven by Maloney, to obtain both an overview of the town and a demonstration of routine procedures (part of Maida's on-the-job training).

2. At about 4 p.m. October 18 Maloney entered one of the areas regularly covered as a matter of routine: the canoe launch access area next to one of the main thoroughfares, Mack Road. Maloney saw two vehicles parked side by side (one was the Automobile, the other a Sears van), with two men sitting in the front seat of the Automobile. One of the men was smoking.

3. After the officers (solely on the basis of generalized suspicion, rather than having any degree of probable cause to believe that an offense had been committed[2]) had called in for computer information about the Automobile's registration, but before that information had been received from the station, the passenger left the Automobile and entered the van—and the two vehicles then pulled out of the canoe launch area. Maloney followed the Automobile onto Mack Road, then lost sight of the vehicle after it had turned onto Batavia Road.[3]

4. While Maloney was following the Automobile, Runowski (who was then driving and was the sole occupant of the vehicle) exceeded the posted speed limit of 30 miles per hour by a few miles per hour. Within a short time after Maloney and Maida had lost sight of the Automobile, Maloney again saw it (this time on nearby Williams Road, where Runowski had gone and was in the process of picking up his young friend John Adler ("Adler"), then planning to drive to the home of another friend, Robert Johnson ("Johnson")).[4]

---

1. All further citations to Title 21 provisions will simply take the form "Section—."

2. Maida testified that earlier that day the DuPage County Forest Preserve District (where the canoe launch area was located) and DuPage County officers had asked the Warrenville police to monitor any possible drug-related activity in the area.

3. Maloney himself testified that his initial activity in following the Automobile was caused by the same generalized suspicion of possible illegal-substance activity that had motivated the initial check on the Automobile's registration.

4. Maloney telescoped the time involved between his losing sight of the Automobile and then respotting it into a matter of seconds rather than minutes. Like other more material parts of Maloney's story, that lacks credibility. At least a few minutes necessarily passed while Runowski stopped at the Adler house to talk with Adler in the house (it is undisputed that Adler was not outside the house expecting Runowski's arrival). There is no reason for Maloney to have stretched the facts in that manner on such a non-critical issue, except to fortify his story that his activity in following the Automobile was triggered by probable cause to believe that a traffic offense had been committed. In

5. Maloney again followed the Automobile, this time until it came to a stop in a residential area (actually in the Johnson driveway) and Maloney pulled into the same driveway after it. Again Runowski did violate the traffic laws en route by traveling somewhat in excess of the speed limits (though nothing even approaching high speeds or a high-speed chase was involved), perhaps also by making two right turns without engaging his turn signal and perhaps also by crossing the midline of the road (an unmarked one) in the course of his final left turn.[5] Nonetheless, though those violations (either singly or in combination) must be characterized as minor, and though it remains this Court's finding that Maloney's initial and continuing motivation for pursuing the Automobile was that referred to in n. 4,[6] probable cause did exist for an arrest of Runowski for the traffic violations.

6. Both Maloney and Maida then approached the Automobile. Each testified there was a strong odor of burned cannabis[7] coming from the car and that there was a crushed green leafy substance (presumably marihuana) scattered all over the passenger car seat. For the reasons stated in later Findings, this Court does not credit that testimony. In any event, it is undisputed that both Runowski and Adler were promptly asked to and did step out of the Automobile, so that the searches and seizures that took place thereafter were unrelated to the traffic violation—and indeed they have not been sought by the government to be justified on that basis.

7. Maloney also said there were, in plain view upon his looking into the front seat area of the Automobile (to be precise, located on a tray resting on the transmission hump on the floor in front of the seat), a glass pipe (usable to smoke marihuana) and a circular mirror (usable to cut "lines" of cocaine to be snorted) with a white powdery substance on it. Although Maida had earlier stood in the same position at the passenger door with the window down, he did *not* corroborate Maloney's testimony about such items being in plain view. This Court also does not credit Maloney's testimony in that respect.

8. Maloney also said that Runowski then agreed to the opening of the glove compartment, where Maloney says he found more of the green substance and some other drug-related materials. That testimony also was uncorroborated by Maida and is not credited by this Court.

9. Maloney admittedly did not tell Runowski that he was under arrest as soon as Maloney says he saw the contraband materials in plain view, or even when he claims he saw other such materials in the glove compartment.[8] Instead Maloney again

---

fact Maloney was clearly out for bigger game from the outset: He specifically talked to Maida about probable cause for an arrest on *narcotics* charges at the canoe launch area, when the officers first saw someone smoking in the Automobile (and of course before any traffic violations could have occurred—after all, the car was parked at that time). When Maloney concluded that no such probable cause existed, he followed the Automobile in the obvious hope that a traffic violation might serve as the springboard for an arrest and thence for investigation of possible narcotics activity.

5. There were no oncoming vehicles at the time of the assertedly improper left turn.

6. Additional corroboration for the fact that Maloney was not acting out of immediate concern for public safety (triggered by Runowski's traffic violations) is proved by the fact that despite Maloney's having followed the Automobile for several miles and despite his having observed what he now identifies as a number of traffic violations, neither officer ever activated the Mars light on their vehicle until Runowski had already come to his final destination and was already stopped in the Johnson driveway, where the officers had followed him.

7. Because Section 802(16) uses the term "marihuana" to embrace all active parts of the cannabis plant, these Findings and Conclusions will hereafter use "marihuana" even when the witnesses employed "cannabis" in their testimony. For the same reason, the spelling "marihuana" will be used here rather than the more familiar "marijuana."

8. Of course, once Runowski was outside of the Automobile—with his driver's license having been given to the officers for checking—it is certainly questionable whether a reasonable person in Runowski's situation would have felt free to leave. In the legal sense, then, Runowski may well have been under arrest for the traffic offenses though neither officer had said so. But none of the consequences that flow from such status (for example, from Runowski's

asked Runowski for permission to look into the Automobile. In response Runowski asked whether Maloney wanted to look in his briefcase, and upon Maloney's affirmative response the briefcase was opened (disclosing books and no contraband). That same sequence followed as to the car's trunk, again with no contraband disclosed. But then Maloney went ahead *without* Runowski's consent to search the car's interior, resulting in discovery of a number of items of drugs and drug paraphernalia. Only *then* did Maloney tell Runowski he was under arrest.

10. Maida substantially (though not entirely) corroborated Maloney's story about Runowski's driving and about the minor traffic violations it reflected. As already stated, Maida also corroborated Maloney's story about the smell of burned marihuana and the presence of the leafy substance (which Maida believed to be marihuana) on the passenger car seat. But as indicated earlier, Maida did *not* corroborate Maloney's testimony as to the plain-view sighting of drug materials referred to in Finding 7, nor did he confirm Maloney's claimed viewing of any such materials in the glove compartment.

11. According to Runowski, he smoked an ordinary cigarette and *not* marihuana when he was seated with a fellow Sears employee at the canoe launch site. When Runowski later went to Adler's house (not by prearrangement, something Adler confirmed), they spent a few minutes talking, then got into Runowski's car to drive to Johnson's house. Both Runowski and Adler denied any smell of burned marihuana and denied the presence of any crushed green leaves on the seat, as well as denying that the materials to which Maloney (but not Maida) testified were in plain view on the floor of the front seat. It is also wholly without dispute that Runowski did *not* consent to the search that eventuated in the discovery of the other contraband (or the discovery of the contraband referred to in the preceding sentence, if that material was indeed not in plain view either).

12. In terms of credibility, the Runowski–Adler story is clearly more plausible than that of Maloney. Their story is also more plausible than the portions of Maida's testimony that partly corroborate Maloney's version. It simply does not ring true that officers who have smelled burned marihuana and who have seen the substance in plain view (assertedly scattered all over the front passenger seat of the automobile) would not have placed Runowski under arrest then and there. What all four witnesses agreed upon is that (a) the subjects of the burned marihuana smell and of the alleged contraband on the car seat were *never* mentioned to Runowski or Adler by either Maloney or Maida and that (b) Maloney announced that Runowski was under arrest only after he had located all the other materials he found during the course of his search.

13. Finding 12's credibility determination applies with equal force to Maloney's testimony (this time uncorroborated by Maida) as to his having allegedly spotted the Finding 7 materials in plain view on the floor of the front seat (an area that Maida had within his own plain view shortly before that) and in the glove compartment as well. Again it does not ring true that Maloney, armed with such cumulative evidence of narcotics violations, would not have placed Runowski under arrest at that point. Again the fact of Maloney's having proceeded with his requests for further access to the Automobile, followed by the unconsented-to search that he then conducted, discredit his testimony that he already had evidence (as contrasted with no more than a suspicion) of illegal drug activity.

14. Because Maloney and Maida did not in fact smell burned marihuana when they said they did and because there was in fact no evidence of illegal substances in plain view, Maloney lacked probable cause for the unconsented-to search of the Automobile. Accordingly the materials located as the result of that search must be and are

having given a non-*Mirandized* statement) is at issue here, so the legal question is really not relevant.

suppressed for the reasons stated in the Conclusions.

## Conclusions of Law

1. This proceeding is brought under Section 881(a)(4). This Court has jurisdiction of this action under 28 U.S.C. §§ 1345 and 1355, and this proceeding is governed procedurally by the Supplemental Rules for Certain Admiralty and Maritime Claims.

■ 2. If account is taken of the materials ultimately obtained as the result of Maloney's search of the Automobile, there is certainly probable cause to believe that the Automobile was used (in the language of Section 881(a)(4)) "to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of" a controlled substance (*United States v. $84,000 U.S. Currency,* 717 F.2d 1090, 1101 (7th Cir.1983)). That shifts the burden of proof to claimant Runowski to establish any available affirmative defense by a preponderance of the evidence (*id.*).

■ 3. One possible such defense could stem from Runowski's ability to show that the traffic stop represented a pretextual arrest masking the officers' real purpose of searching for narcotics (see *United States v. D'Antoni,* 856 F.2d 975, 979 (7th Cir. 1988)). Although here the officers' interest in Runowski at the outset stemmed wholly from their unsupported suspicion about drug-related activity, and though it is more than reasonable to assume that such continued suspicion rather than Runowski's minor observed traffic violations remained the reason for the officers' pursuit and for the actual apprehension of Runowski in the first instance, *United States v. Trigg,* 878 F.2d 1037, 1041 (7th Cir.1989) (citation omitted) has rejected such subjective intent as the standard for Fourth Amendment[9] reasonableness of a post-arrest search and seizure:

> Given this language in a Supreme Court opinion [*Gustafson v. Florida,* 414 U.S. 260, 265, 94 S.Ct. 488, 491–92, 38 L.Ed.2d 456 (1973)], we, as an intermediate appellate court, do not feel empowered to evaluate the reasonableness of a particular arrest based on the arrest's conformance to usual police practices. Rather, we believe that the reasonableness of an arrest depends upon the existence of two objective factors. First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense. Second, was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense. If these two factors are present, we believe that an arrest is necessarily reasonable under the fourth amendment. This proposition may be stated in another way: so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional.

■ 4. By that standard the arrest of Runowski for the traffic violations was constitutional. In turn, a search of Runowski himself purely incident to that arrest (like the search in *Trigg*) would have passed constitutional muster. But here the contraband was *not* located on Runowski's person (as it was on Trigg's). Instead the discovery of the contraband stemmed from an unconsented-to search of the *Automobile,* lacking probable cause to do so.[10]

■ 5. With no evidence of narcotics-related illegal activity having manifested itself to the officers' senses—either by the

---

9. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the Fourth Amendment's underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

10. There was no evidence offered here to support a finding that the search of the Automobile—at a time when Runowski was already out of the vehicle and was subject to the officers' control, and when the Automobile itself presented no flight risk, no danger of destruction of any contraband or any other relevant risk—was itself incident to the arrest. This situation may be profitably contrasted with *United States v. Kordosky,* 878 F.2d 991, 993 (7th Cir.1989), where the testimony established that the seizure and subsequent inventory search of the vehicle were part of the standard procedures incident to the arrest of the driver (in that case, someone operating the vehicle with a suspended license and hence subject to a full custodial arrest).

smell of burned marihuana or by the plain viewing of any illegal substances or narcotics paraphernalia—Maloney's search of the Automobile was no more than an impermissible pursuit of his factually-ungrounded suspicions. And the law of search and seizure does not reason from results—it does not permit *post hoc ergo propter hoc* justification of a search. Because the evidence obtained as the result of the illegal search is inadmissible in this forfeiture proceeding (*One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–702, 85 S.Ct. 1246, 1250–1252, 14 L.Ed.2d 170 (1965)), no forfeiture of the Automobile is sustainable here.

\* \* \* \* \* \*

For the reasons stated in the foregoing Findings and Conclusions, the Automobile is not forfeited to the United States. Judgment is ordered to be entered dismissing the Complaint and this action and returning the Automobile to claimant Eric Runowski.

And of course there was nothing to inhibit the officers from maintaining custody of the Automobile while obtaining a search warrant from an impartial judicial officer.