ORDER

McDADE, District Judge.
Before the Court is Defendant’s Motion for Summary Judgment [Doc. # 38]. Defendant in this case is employed as a trooper with the Illinois State Police. Plaintiff is an Hispanic male who was involved in a felony stop initiated by Defendant. Plaintiff claims that Defendant made an unlawful arrest of Plaintiff, used unreasonable force in detaining Plaintiff, verbally abused and harassed Plaintiff, and initiated the stop based upon Plaintiffs race and ethnicity—all in violation of rights secured by the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff brings this suit based upon 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.
“A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial.” Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This Court must “view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.” Holland v. Jefferson National Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989). When faced with a motion for summary judgment, the non-moving party may not rest on its pleadings. Rather, it is necessary for the non-moving party to demonstrate, through specific evidence, that there remains a genuine issue of triable fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).

BACKGROUND

On April 23, 1991, at approximately 2:25 p.m., Defendant was on duty in his capacity *1238 as an Illinois State Police trooper. While patrolling on Route 5, Defendant observed a vehicle owned and driven by Plaintiff. Plaintiffs girlfriend was with Plaintiff in his car at this time. Plaintiffs vehicle was a white, two-door Pontiac Firebird. Defendant maintains that Plaintiffs vehicle was weaving back and forth across the center line and that Defendant observed that Plaintiffs vehicle had tinted windows. Defendant radioed his headquarters to inform them that he was preparing to initiate a traffic stop of Plaintiffs vehicle. Upon radioing the license plate number of Plaintiffs vehicle, Defendant was informed that the plates were reported to be stolen and belonging to a green, 4 door Oldsmobile. This report stated that this information should be “eonfirm[ed] with ORA.” Approximately eight seconds after this report, a second report involving the license plate number was received by Defendant. This report stated that the license plate number belonged to a 2 door, 1983 Pontiac belonging to Plaintiff and was not listed as stolen. Defendant, apparently, did not confirm the information contained in the initial report but, instead, radioed for assistance from fellow officers to make a felony stop of Plaintiffs vehicle.
Defendant, with the assistance of at least two other troopers and patrol cars, initiated a full felony stop of Plaintiffs vehicle. Defendant, as well as the other officers, approached Plaintiffs vehicle with their service weapons drawn. Defendant ordered Plaintiff to exit his vehicle. At this point, Plaintiffs and Defendant’s versions of the events that followed diverge. Plaintiff claims that he and his girlfriend attempted, to explain that Plaintiff did not speak or understand English, that Defendant screamed at them to “[s]hut the fuck up,” that Plaintiff exited the vehicle, that Plaintiff at no time resisted Defendant or the other police officers, that Defendant grabbed Plaintiff, put his gun to Plaintiffs head, threatened to kill him, wrenched Plaintiffs arm, and threw Plaintiff across the hood of his vehicle, that in response to Plaintiffs statement that Defendant was hurting him, Defendant screamed “[s]hut up” and continued punching Plaintiff, that Plaintiff was taken back to Defendant’s patrol car, and that Defendant released Plaintiff without explanation.
Defendant’s account of the events occurring during the felony stop vary greatly from Plaintiffs. Defendant claims that upon stopping Plaintiffs vehicle, Defendant exited his patrol car, that he drew his service weapon, that Defendant ordered Plaintiff several times to exit his vehicle, that Plaintiff did not exit his vehicle, that Plaintiffs girlfriend jumped out of the vehicle, that Defendant ordered her to get back into the vehicle and tell Plaintiff to get out of the vehicle, that Plaintiffs girlfriend complied and Plaintiff exited the vehicle, that Plaintiff had his hands in his pockets, that Defendant placed Plaintiffs hands in the small of his back and conducted a frisk search of Plaintiff, that Defendant walked Plaintiff back to Defendant’s patrol car and placed him in the front seat, that Defendant returned to Plaintiffs vehicle to speak to Plaintiffs girlfriend, that Plaintiffs girlfriend jumped from the vehicle, swung her fists at Defendant and screamed “[y]ou motherfuckers, you motherfuckers,” that Defendant restrained Plaintiffs girlfriend, attempted to explain the situation to her and placed her back into the vehicle, that Defendant returned to his vehicle and explained the situation to Plaintiff, that Plaintiff stated that he had been stopped several times before in regard to his license plates, and that Defendant apologized to Plaintiff for the inconvenience and told him that he was free to leave.

ANALYSIS

In response to the events surrounding the stopping of Plaintiffs vehicle and subsequent treatment by Defendant, Plaintiff filed the present suit under 42 U.S.C. § 1983. Plaintiff claims that Defendant deprived him of rights secured by the Fourth and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiff claims that Defendant did not have probable cause to arrest and detain him resulting in an unreasonable and unlawful arrest, that Defendant used excessive force in arresting and detaining Plaintiff, that Defendant verbally abused and harassed Plaintiff, and that Defendant violated Plaintiffs equal protection rights. Defendant contends that there is no dispute of material fact in this case and has moved for summary judgment. The Court shall consid *1239 er each of Plaintiffs claims seriatim to determine if summary judgment is proper in this case.

Unlawful Arrest

Defendant contends that probable cause existed for Defendant to conduct a felony stop of Plaintiffs vehicle and, therefore, summary judgment is appropriate on the claim of unlawful arrest.[1] Defendant argues that he observed that Plaintiffs windows were illegally tinted, that he observed Plaintiffs vehicle drift or veer from the driving lane to the passing and back again without signalling, and that he was informed that Plaintiffs license plates were reported stolen by radio dispatch. As such, Defendant argues that probable cause existed to conduct a felony stop of Plaintiffs vehicle. Plaintiffs opposition brief argues that Defendant lacked probable cause to detain and arrest Plaintiff because Defendant could not have seen the windows of his car which were tinted because those windows were rolled down, that Plaintiff did not weave back and forth, but merely changed lanes and legally returned to his lane, and that Defendant should have verified the contradictory information he received regarding the status of Plaintiffs license plates. As such, Plaintiff contends that Defendant lacked probable cause and the arrest was, therefore, unreasonable and unlawful.
When a question of probable cause arises in a suit for damages, “it is a proper issue for the jury if there is room for a difference of opinion concerning facts or the reasonable inferences to be drawn from them.” Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir.1993) citing Llaguno v. Mingey, 763 F.2d 1560, 1565 (7th Cir.1985) (en banc) (plurality opinion) and Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1346-47 (7th Cir.1985). “Accordingly, a conclusion that probable cause existed as a matter of law is appropriate only when no reasonable jury could find” that Defendant Trooper Tone did not have probable cause to arrest Plaintiff. Id. The Court notes, however, that Llaguno and Moore were unusual cases and did not establish that every individual arrested and subsequently released without being charged with a criminal offense is automatically entitled to a trial on whether he should have been arrested. See Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 438 (7th Cir.1986). Upon considering only those facts to which there are no genuine disputes, the Court finds that Defendant’s Motion for Summary Judgment on Plaintiffs claim of unreasonable and unlawful arrest must be granted.
The determination of whether an arrest is reasonable for purposes of the Fourth Amendment turns upon two objective factors. United States v. Trigg, 925 F.2d 1064, 1065 (7th Cir.1991); United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir.1989); Gramenos, 797 F.2d at 440-41. The first factor is whether the arresting officer had probable cause to believe that the individual arrested had committed or was committing an offense. Trigg, 925 F.2d at 1065. The second factor is whether the arresting officer was authorized by state and or municipal law to effect a custodial arrest for the particular offense committed. Id. If these two factors are present, an arrest is necessarily reasonable under the Fourth Amendment. Trigg, 878 F.2d at 1041. The Court shall examine each of these factors in turn.
Defendant argues that probable cause to arrest Plaintiff was provided by Defendant’s firsthand observation of Plaintiffs violation of two traffic laws (tinted windows and improper lane changes) and the radio dispatch reporting the possibility that the plates on Plaintiffs vehicle were stolen. The Court shall first consider whether probable cause existed to arrest Plaintiff for the violation of *1240 the two traffic offenses. Plaintiff argues that probable cause to arrest him for the alleged traffic violations was lacking. Plaintiffs evidence fails to support his argument and does not create a genuine issue of material fact. As to the tinted windows, Plaintiff argues in his brief that his windows were rolled down and that Defendant could not have seen them prior to the arrest. Plaintiffs own deposition testimony, however, states that his window was only rolled down four to six inches. Defendant could, therefore, have seen Plaintiffs tinted windows.
As to the allegations that Plaintiff illegally changed lanes, Plaintiff argues in his brief that he legally changed lanes. Plaintiff, however, offers no affidavits or evidence of any sort that would support his contention.[2] A non-moving party when faced with a summary judgment motion must demonstrate through specific evidence that there remains a genuine issue of triable fact. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Lee, 928 F.2d at 236. Plaintiff has failed to present any evidence that Defendant did not have probable cause to arrest Plaintiff for either having tinted windows or illegally changing lanes. Under the circumstances set out in the record, any reasonable police officer could have found probable cause to arrest. Accordingly, the Court finds that Defendant had probable cause to believe Plaintiff was committing the specified traffic offenses. See Krueger v. City of Algoma, 1 F.3d 537, 540 (7th Cir. 1993); United States v. One 1968 Cadillac Coupe DeVille, 730 F.Supp. 1434, 1436 (N.D.Ill.1990).
The existence of probable cause to arrest Plaintiff based upon the radio dispatch reporting the possibility that the plates on Plaintiffs vehicle were stolen is less clear than in the case of the traffic violations. The initial message received by Defendant indicated that the plates on Plaintiffs vehicle possibly were stolen and that Defendant should verify the information with ORA. Seconds later, a second message contradicted the first. Although these contradictory messages clearly supplied Defendant a basis upon which to demonstrate an articulable suspicion supporting a Terry investigatory stop, the Court cannot say that no reasonable jury could find that Defendant lacked probable cause to arrest Plaintiff. Therefore, the Court finds that it cannot state as a matter of law that the radio dispatch provided Defendant with probable cause to arrest Plaintiff. This is an issue to be resolved at trial. However, as explained above, probable cause based upon the traffic violations observed by Defendant did exist to arrest Plaintiff. Accordingly, the first factor in the reasonable arrest analysis is present.
The second factor in determining whether an arrest is reasonable for purposes of the Fourth Amendment is whether the arresting officer was authorized by state or municipal law to effect a custodial arrest for the particular offense. The common law rale holds that an officer may make a custodial arrest for a misdemeanor only if the crime was committed in his presence. Gramenos, 797 F.2d at 441. In the present case, the traffic offenses were committed in Defendant’s presence. In addition, Illinois law allows full custodial arrest for any crime, including misdemeanor traffic offenses, when probable cause is present. Id. The second factor in the reasonableness analysis is, therefore, present.
The fly in the ointment is the admitted fact that Plaintiff was stopped at gunpoint in accordance with the Illinois State Police felony stop procedures. Did this use of force by Defendant taint an otherwise lawful stop and arrest for traffic violations? Presumably, felony stop procedures, specifically the use of a firearm, are not routinely authorized when making misdemeanor traffic stops absent some exigent circumstances which would implicate concerns for the safety of the officer or another person. In the case at bar, the only possible exigent circumstance known to Defendant was the contra *1241 dictory information concerning the possibility that the license plate on Plaintiffs vehicle was stolen which, presumably, portends a felony violation. The Court has already found that whether or not Defendant had probable cause to arrest Plaintiff for this possible offense- is an issue for trial. As such, it cannot be a basis in the context of Defendant’s Motion for Summary Judgment for justifying the level of force employed by Defendant when stopping Plaintiff. However, this critical question of whether Defendant was justified in using his weapon to effect the arrest and whether the force used was reasonable under the circumstances is more properly analyzed in Plaintiffs excessive force claim, not Plaintiffs unlawful arrest claim. In the context of Plaintiffs unlawful arrest claim, Defendant’s use of his gun to stop Plaintiff elevated a Terry investigatory stop to an arrest situation requiring probable cause to be lawful. Defendant’s use of a gun in making an arrest for misdemean- or traffic offenses which was supported by probable cause did not, however, transform an otherwise lawful arrest to an unlawful arrest. Whether the use of a gun by Defendant in the present situation violated the Fourth Amendment is a question that should be analyzed under the rubric of excessive force, not unlawful arrest.
The Court finds that probable cause existed for Defendant to arrest Plaintiff for the violation of two traffic laws. In addition, the Court finds that Defendant was authorized to arrest Plaintiff based upon the traffic violations. As such, Defendant’s arrest of Plaintiff was, necessarily, reasonable under the Fourth Amendment although the manner of the arrest and whether excessive force was used is problematic. Defendant’s Motion for Summary Judgment is, therefore, granted as to the claim of unreasonable and unlawful arrest.

Excessive Force

Defendant argues that the amount of force employed by Defendant while in the course of the felony stop of Plaintiff was reasonable. Excessive force in arrest claims are exclusively determined under the Fourth Amendment objective reasonableness standard. Lester v. Chicago, 830 F.2d 706, 712 (7th Cir.1987). Under the Fourth Amendment, “a police officer’s use of force in arresting a suspect violates the Constitution if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.” Id. at 713. Under Plaintiffs version of the facts, without regard to the admitted use of a weapon to effect the traffic stop, it appears from the totality of the circumstances that Defendant did not use reasonable force in seizing Plaintiff. See Taylor v. Kveton, 684 F.Supp. 179, 182-83 (N.D.Ill.1988). Therefore, disputes of material facts preclude the Court from deciding the issue of excessive force on a motion for summary judgment.

Verbal Abuse and Harassment

Defendant argues that Plaintiff cannot make out a claim for verbal abuse and harassment under 42 U.S.C. § 1983. Plaintiff bases his claim for verbal abuse and harassment upon the allegations that Defendant told Plaintiff to “shut the fuck up” and that Defendant had threatened Plaintiffs life.[3] Defendant denies these allegations. Even assuming that Plaintiffs allegations are true, they are insufficient grounds for relief under 42 U.S.C. § 1983. Verbal abuse does not rise to the level of a constitutional violation and cannot be a basis for a suit brought under 42 U.S.C. § 1983. Patton v. Przybylski, 822 F.2d 697 (7th Cir.1987); Moore v. Marketplace Restaurant, 754 F.2d 1336 (7th Cir.1985); Pryor v. Cajda, 662 F.Supp. 1114 (N.D.Ill.1987); Lee v. Severin, 1985 WL 3009 (N.D.Ill.1985); Keyes v. Albany, 594 F.Supp. 1147 (N.D.N.Y.1984); Stacey v. Ford, 554 F.Supp. 8 (N.D.Ga.1982). In addition, a single incident does not a campaign or pattern of harassment make. O’Leary v. Luongo, 692 F.Supp. 893, 901 (N.D.Ill.1988). Therefore, summary judgment is properly awarded Defendant on this claim.

*1242
Equal Protection

Defendant contends that he did not violate Plaintiffs equal protection rights. The core of any equal protection claim is a showing of intentional discrimination against a plaintiff because of his membership in a particular class, not merely that he was treated unfairly as an individual. Bohen v. East Chicago, 799 F.2d 1180, 1186-87 (7th Cir.1986); Huebschen v. Department of Health and Social Services, 716 F.2d 1167, 1171 (7th Cir.1983). Although evidence of pattern or practice of discrimination is strong evidence supporting a plaintiffs claim, a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes. Id. Discriminatory intent may be proved by direct or circumstantial evidence. Lowe v. Monrovia, 775 F.2d 998 (9th Cir.1985). Therefore, Plaintiff must demonstrate that not only was he treated differently from similarly situated persons, but also that Defendant acted with discriminatory intent. Plaintiff has failed to produce sufficient evidence on either of these elements to avoid summary judgment.
Plaintiff attempts to demonstrate that he was treated differently by Defendant than similarly situated white persons by presenting evidence of the treatment of a Mr. Jeff Felkey (“Felkey”). Defendant initiated a traffic stop of a vehicle driven by Felkey, allegedly a white man, because Defendant observed that Felkey’s vehicle had a loose rear registration plate light and because Defendant believed that Felkey was exceeding the posted speed limit. Defendant escorted Felkey back to his patrol car and wrote him a ticket for failure to wear a seat belt and issued Felkey a written warning for speeding, improper lighting, and having an obstructed windshield. There is no evidence that Defendant used any force on Felkey during this traffic stop.
The evidence of Defendant’s treatment of Felkey fails to support Plaintiffs equal protection claim because Felkey and Plaintiff were not similarly situated. In Fel-key’s case, Defendant was involved in a straightforward traffic stop. There is no evidence of any felony violation or possible felony violation in the Felkey case. In Plaintiffs case however, Defendant received information that a felony violation possibly was occurring. The information provided Defendant of the possibility of a felony situation sufficiently differentiates Plaintiffs case from that of Felkey’s so that it cannot be said that Plaintiff and Felkey are similarly situated. As such, Plaintiff has failed to provide evidence sufficient to establish different treatment of similarly situated persons.[4]
Plaintiff also fails to establish the required element of discriminatory intent. Plaintiff argues that since Defendant could see him and knew his name, Defendant knew Plaintiff was Hispanic. As such, Plaintiff argues, there is a genuine question as to whether Defendant possessed the required discriminatory intent. Plaintiffs argument would seem to suggest that whenever an Hispanic person is arrested, discriminatory intent must be presumed. The Court must disagree. Plaintiff may not merely put forth conclusory allegations of discriminatory intent, but rather, Plaintiff is required to produce evidence demonstrating discriminatory intent. O’Connor v. Chicago Transit Authority, 985 F.2d 1362, 1371 (7th Cir.1993); Sims v. Mulcahy, 902 F.2d 524, 538-41 (7th Cir.), cert. denied 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990); Davis v. Frapolly, 717 F.Supp. 614, 616 (N.D.Ill.1989); Compare Pembroke v. San Rafael, 1993 WL 430231 (N.D.Cal.1993). Plaintiff has faded to produce sufficient evidence that a trier of fact could conclude that he was discriminated against because of his race or ethnicity and that similarly situated individuals were not treated in the same manner. Therefore, Defendant’s Motion for Summary Judgment must be granted as to Plaintiffs equal protection claim.

CONCLUSION

IT IS THEREFORE ORDERED that Defendant’s Motion for Summary Judgment *1243 [Doc. # 38] is GRANTED in part and DENIED in part. Defendant’s motion is GRANTED in respect to Plaintiffs claims of unlawful arrest, verbal abuse and harassment and equal protection. Defendant’s motion is DENIED in respect to Plaintiffs claims of excessive force. This case is referred back to the Magistrate Judge for further proceedings.

. Defendant does not contest Plaintiff's assertion that he was arrested. Since a traffic stop is analogous to a Terry investigatory stop and does not require probable cause, but rather only an articulable suspicion, Defendant’s argument that probable cause existed for the stop indicates that he concedes an arrest took place. United States v. Perdue, 8 F.3d 1455, 1462-63 (10th Cir.1993); United States v. Serna-Barreto, 842 F.2d 965 (7th Cir.1988); United States v. Sharpe, 845 F.Supp. 791 (D.Kan.1994). Indeed, that is precisely what occurred when Plaintiff accompanied by two other officers used the level of force associated with a felony stop (the use of three squad cars to block in and stop Plaintiff and the use of guns which were aimed directly at Plaintiff) when stopping Plaintiff's vehicle in a situation which lacked sufficient indicia of danger to the officers to warrant such a "massive" display of force. Ser-na-Barreto, 842 F.2d at 967-968; United States v. Ceballos, 654 F.2d 177 (2nd Cir.1981).

. In Plaintiffs response to Defendant’s Motion for Summary Judgment, Plaintiff's attorney represents to the Court that evidence exists to support his claims that Defendant could not have seen Plaintiff's tinted windows and that Plaintiff did not illegally change lanes. Upon viewing this supposed evidence, it is clear to the Court that, at best, Plaintiff's attorney's statements border upon misrepresentation. The Court reminds Plaintiff's attorney of his legal and ethical obligations as an officer of this Court and warns him against similar future occurrences.

. The Court notes with interest that Plaintiff maintains that he speaks and understands little if any English.

. Although not argued by Plaintiff in his opposition to Defendant's Motion for Summaiy Judgment, the situation described by Plaintiff wherein a white driver he was riding with received different treatment by the police when stopped also fails to support his claim. As with the Felkey situation, there is no evidence that the possibility of a felony violation was present in that particular traffic stop. As such, Plaintiff and the unknown white driver are not similarly situated.